CHARLES L. ELLINGTON AND CONSTANCE L. ELLINGTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; UNLIMITED FINANCING INCORPORATED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ellington v. Commissioner
Docket Nos. 33706-87; 33707-87
United States Tax Court
T.C. Memo 1989-374; 1989 Tax Ct. Memo LEXIS 373; 57 T.C.M. (CCH) 1077; T.C.M. (RIA) 89374; July 26, 1989
Charles L. Ellington and Constance L. Ellington, pro sese. Ronald T. Jordan, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Charles L. and Constance L. Ellington
(Petitioners)
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$ 194,736
$ 97,368
*
$ 48,684
1983
$ 33,384 $ 16,692
*
$ 8,346 *375 Unlimited Financing Incorporated
(Unlimited)
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$ 157,184
$ 78,592
*
$ 39,296
1983
$ 13,576 $ 6,738 *
$ 3,394 Respondent also determined that petitioners and Unlimited were liable for increased interest on tax-motivated transactions on the entire underpayments for both years in issue. Sec. 6621(c). Unless otherwise indicated, all section references are to the 2 Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by the parties, the issues remaining for decision are: (1) whether Unlimited failed to report gross receipts of $ 5,388 in 1983; (2) whether Unlimited received nonqualifying dividend income of $ 3,639 and $ 365 in 1982 and 1983, respectively; (3) whether Unlimited's payments *376 of $ 156,500 and $ 35,000 in 1982 and 1983, respectively, were deductible business expenses; (4) whether Unlimited is entitled to net operating loss deductions of $ 52,505 and $ 17,489 in 1982 and 1983, respectively; (5) whether Unlimited is entitled to deduct business expenses as follows: (a) $ 34,943 and $ 30,700 in 1982 and 1983, respectively, for rental expenses; (b) $ 39,610 and $ 4,567 in 1982 and 1983, respectively, for expenses related to petitioners' residence; (c) $ 8,660 and $ 1,040 in 1982 and 1983, respectively, for car rental and gasoline; (d) $ 18,187 and $ 3,559 in 1982 and 1983, respectively, for travel expenses; (e) $ 29,000 and $ 5,950 in 1982 and 1983, respectively, for fees returned to clients; and (f) $ 18,230 and $ 5,190 in 1982 and 1983, respectively, for miscellaneous expenses; (6) whether Unlimited is liable for the additions to tax as set forth above; (7) whether petitioners received constructive dividends in 1982 and 1983 for payments made by Unlimited for rent, expenses related to petitioners' residence, car rental, gasoline, and travel expenses listed in (5) above; (8) whether petitioners diverted income of $ 39,588 *377 from Unlimited in 1982; (9) whether petitioners are entitled to a deduction of $ 150 for a charitable contribution in 1982; (10) whether petitioners are entitled to an energy credit of $ 753 in 1982; and (11) whether petitioners are liable for the additions to tax as set forth above. FINDINGS OF FACT Some of the facts have been stipulated. The facts set forth in the stipulations are incorporated in our findings by this reference. Petitioners resided in Dayton, Ohio, at the time they filed their petition. Unlimited maintained its principal office in Dayton, Ohio, at the time its petition was filed. Petitioner Constance L. Ellington is a teacher holding bachelor's, master's, and doctorate degrees in education. During the years in issue, Mrs. Ellington conducted workshops for the City of Dayton, Ohio. Petitioner Charles L. Ellington has a high school equivalency diploma. Beginning in the 1950's, Mr. Ellington was involved in the real estate business. During the years in issue, Mr. Ellington was attending the University of Dayton studying geology. Unlimited was incorporated by petitioners under the laws of the State of Ohio on November 13, 1978. During *378 the years in issue, petitioners were the only officers and shareholders of Unlimited. Petitioners, through Unlimited, operated a financial consulting and mortgage brokerage business. Upon payment of a fee by its clients, Unlimited would arrange financial guarantees for loans. If Unlimited was successful in obtaining these loan guarantees for its clients, the clients expected to be able to borrow large sums of money from foreign investors and reloan the funds at higher interest rates. On August 10, 1984, Mr. Ellington was convicted of mail fraud, 18 U.S.C. sec. 1341, relating to activities undertaken by him through Unlimited between May 1, 1979, and August 1, 1980. Subsequently, petitioners and Unlimited were sued by various clients to recover their investments and for damages. During the years in issue, Unlimited paid and deducted substantial legal expenses related to these lawsuits. In September 1974, petitioners formed Nunhahda Foundation, Inc. (Nunhahda), which is incorporated under the laws of the State of Ohio. Petitioners and Eva L. Ellington are the trustees of Nunhahda. On March 14, 1975, petitioners filed Form 1023, Application for Recognition *379 of Exemption, for Nunhahda. Petitioners described the activities that would be carried on as follows: "The Nunhahda Foundation, Inc. is a school. It will offer training, counseling, and information on other social services." On May 28, 1975, respondent granted exempt status to Nunhahda. On May 19, 1975, petitioners transferred to Nunhahda a parcel of land located on McLin Drive in Dayton, Ohio. In 1975, petitioners also transferred a Jaguar automobile and cash of $ 5,302 to Nunhahda. Nunhahda did not pay any consideration for these transfers. Petitioners applied for a building permit to build a seven room, single family residence on the property located on McLin Drive. In 1976, Nunhahda borrowed $ 10,000 from the Dayton, Ohio, Teachers Federal Credit Union and granted a mortgage on the property to this institution. With this $ 10,000 and additional amounts contributed by petitioners, Nunhahda commenced construction of a residence on McLin Drive, which was held in the name of Nunhahda. Unlimited thereafter operated out of the residence on McLin Drive. On January 1, 1979, Unlimited entered into a 20-year "Office Lease" with Nunhahda. The lease was signed by Constance Ellington, *380 Secretary, on behalf of the "lessor" Nunhahda and by Charles L. Ellington on behalf of the "lessee" Unlimited. In return for an annual rental of $ 12,000, Nunhahda leased 2,000 square feet of office space to Unlimited. At most, Unlimited used two first-floor rooms of the McLin Drive residence as its offices. On the same date, petitioners entered into a 20-year "Living Quarters Lease" with Nunhahda. The lease was signed by Constance L. Ellington, Secretary, on behalf of the "lessor" Nunhahda and by Charles L. Ellington as "lessee." In return for an annual rental of $ 3,600, Nunhahda leased 1,500 square feet of living space to petitioners to be used as their residence. Petitioners formed C.L.E. Investment Group, Inc. (CLE). In 1983 petitioners applied for exempt status for CLE, and on June 27, 1983, CLE was recognized as an exempt organization. During the years in issue, CLE maintained checking account number 019216-3 at The Third National Bank & Trust Company, Dayton, Ohio, and Merrill Lynch Ready Assets Trust account number XXXXX921-5. Petitioners used the CLE accounts to pay Nunhahda's expenses during 1982 and 1983. Nunhahda also maintained checking account number 054-622-1 at *381 the First National Bank of Dayton, Ohio. During the years in issue, petitioners used the CLE accounts to handle Unlimited's funds. Unlimited's gross receipts were deposited to the CLE accounts, and Unlimited's expenses were paid from these accounts. Unlimited also maintained checking account number 072-0814 at the First National Bank of Dayton, Ohio. Unlimited deposited amounts totaling $ 354,411.98 and $ 67,388.35 to the CLE accounts during 1982 and 1983, respectively. For the year ended December 31, 1982, Unlimited's cash receipts journal reflected gross receipts of $ 406,000. The sum of $ 12,000 listed in Unlimited's cash receipts journal was not income to Unlimited because a check was returned for insufficient funds. Accordingly, Unlimited's gross receipts for 1982 totaled $ 394,000. Unlimited reported gross receipts of $ 400,000 and $ 62,000 on its Federal income tax returns for 1982 and 1983, respectively. During 1982 and 1983, deposits to Merrill Lynch Ready Assets Trust account number 66607921-5 consisted of Unlimited's gross receipts and transfers from other CLE bank accounts. The balances in this account earned dividend income of $ 3,638.97 and $ 364.90 in 1982 *382 and 1983, respectively. Unlimited deducted rental expenses of $ 34,943 and $ 30,700 in 1982 and 1983, respectively, purportedly for rental of office space in the residence on McLin Drive. In 1982, Unlimited deducted $ 7,000 for car rental for two automobiles titled in Nunhahda's name. Because Unlimited and Nunhahda used the same bank accounts, accounts controlled by petitioners in the name of CLE, no money changed hands with respect to the purported rental payments. During the years in issue, Unlimited deducted the following expenses relating to the residence on McLin Drive: 1982
1983
Utilities
$ 3,109.30 $ 3,540.25
Remodeling
18,901.83
--   Tractor Lease
6,000.00
52.63
Security
5,030.00
150.00
Trash/Maintenance
480.00
115.50
Repairs
6,089.00
709.22
Total     $ 39,610.13
$ 4,567.60
During the years in issue, Unlimited deducted the following other business expenses: 1982
1983
Phone/Telex
$ 5,437.52  $ 4,034.51 Mailing
974.81
824.16
Travel
18,186.99
3,558.55
Equipment Rental
2,969.90
3,212.16
Supplies
2,536.00
911.47
Legal Fees
39,746.00
8,854.00
Gasoline
1,660.00
1,040.00
Miscellaneous
536.00
176.53
Returned Fees
29,000.00
5,950.00
Arithmetical Error
--   1,040.00
Total     $ 101,047.22
$ 29,601.38
*383 Unlimited deducted payments of $ 156,500 and $ 35,000 in 1982 and 1983, respectively, to obtain letters of commitment for financial guarantees for Unlimited's clients. Unlimited claimed net operating deductions of $ 52,505 and $ 17,489, respectively, in 1982 and 1983, as carryover deductions from operating losses incurred for 1979, 1980, and 1981. Unlimited also claimed a depletion expense deduction of $ 884 in 1982. In the statutory notice of deficiency in Docket No. 33707-87, respondent determined that Unlimited had additional gross receipts and dividend income for 1982 and 1983, as detailed in the list of issues for decision. In addition, respondent disallowed all of Unlimited's claimed deductions for the years in issue. In the statutory notice of deficiency at issue in Docket No. 33706-87, respondent determined that petitioners received constructive dividends of $ 391,573 and $ 99,871 in 1982 and 1983, respectively, from Unlimited. In addition, respondent disallowed petitioners' charitable contribution deduction of $ 150 and energy credit of $ 753 claimed in 1982. Respondent has conceded that where Unlimited is allowed a business deduction for amounts previously disallowed, *384 petitioners should not be charged with a constructive dividend. OPINION With the exception of the additions to tax for fraud, petitioners and Unlimited bear the burden of proving that respondent's determinations are erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Particularly with respect to deductions, they must bring themselves within the terms of the applicable statutes. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Bishop v. Commissioner, 342 F.2d 757, 759 (6th Cir. 1965). Unreported Income - Issues (1) and (2)
Bank deposits are prima facie evidence of income, and Unlimited bears the burden of proving that respondent's determination based on this evidence is incorrect. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Respondent determined that Unlimited made deposits totaling $ 67,388.35 during 1983, but reported gross receipts of only $ 62,000 on *385 its 1983 income tax return. Unlimited presented no evidence to refute respondent's determination that it failed to report gross receipts of $ 5,388 in 1983. Respondent's determination is sustained on this issue. Respondent determined that deposits to Merrill Lynch Ready Assets Trust account number 66607921-5 held in CLE's name consisted of Unlimited's gross receipts and transfers from other CLE bank accounts. The balances held in this account earned dividend income of $ 3,639 and $ 365 in 1982 and 1983, respectively. Unlimited presented no evidence that it did not earn this dividend income. Respondent's determination is sustained on this issue. Business Expenses - Issue (3)
Unlimited deducted payments of $ 156,500 and $ 35,000 in 1982 and 1983, respectively. Respondent disallowed these deductions in full. Petitioners testified that Unlimited paid these amounts to Douglas Brooks and Athol Enterprises to obtain letters of commitment for financial guarantees for Unlimited's clients. Unlimited submitted canceled checks and wire transfer orders written to or for the benefit of Douglas Brooks, Athol Enterprises, or Dr. Evelyn Lherisson to substantiate $ 140,515 and $ 32,750 *386 of these payments made in 1982 and 1983, respectively. Petitioners' testimony as to the business relationship between Unlimited and these third parties and the services performed by them was credible, uncontradicted, and unimpeached, and we accept it. Unlimited's deductions in 1982 and 1983 are sustained in the amounts substantiated. At the close of trial on December 6, 1988, these cases were continued so that Unlimited could make arrangements for testimony from Douglas Brooks. Subsequently, the Court was advised that Brooks would not come to this country to testify, and on January 30, 1989, the record was closed. On May 15, 1989, Unlimited filed a Motion to Admit Needed Evidence to Court Record. Unlimited asks the Court to accept a copy of a canceled check and a letter from Douglas Brooks purporting to confirm payments for letters of commitment during the years in issue in addition to the amounts originally claimed. Respondent objects to Unlimited's motion because the evidence sought to be admitted is hearsay and because the documents sought to be admitted have not been properly authenticated. *387 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Federal Rules of Evidence (FRE). A statement within the definition of hearsay under FRE Rule 801(c) is not admissible unless it comes within one of the exceptions to the hearsay rule set forth in FRE Rules 803 and 804. FRE Rule 802. None of the exceptions is applicable to the materials provided by Unlimited. Unlimited's motion to admit this evidence must be denied. Net Operating Losses - Issue (4)
Unlimited claimed net operating deductions of $ 52,505 and $ 17,489 in 1982 and 1983, respectively, as carryover deductions from operating losses incurred for 1979, 1980, and 1981. Respondent disallowed these deductions in full. Unlimited presented no evidence that it sustained operating losses for 1979, 1980, or 1981 that could be carried forward to the years in issue. Respondent's determination is sustained on this issue. Business Expenses - Issue (5)
A taxpayer generally may deduct ordinary and *388 necessary expenses paid or incurred in carrying on a trade or business. Section 162(a). If the expenses are incurred for business purposes that bear a reasonably close relationship to the taxpayer's trade or business, the expenses will be properly deductible. Commissioner v. Heininger, 320 U.S. 467 (1943). No deduction, however, is allowable for personal, living, or family expenses. Section 262. (a) Rental Expenses
Unlimited deducted rental expenses of $ 34,943 and $ 30,700 in 1982 and 1983, respectively, purportedly paid to Nunhahda for rental of office space in the residence on McLin Drive. Respondent disallowed these deductions in full. To support the deductions it claims, Unlimited produced a 20-year "Office Lease" between itself and Nunhahda. The lease called for annual rent payments of $ 12,000 per year. Unlimited presented no evidence to show that the amounts it claims as rental expenses were reasonable. Where the court is convinced that legitimate business expenses were actually incurred, we may, under appropriate circumstances, approximate the *389 amount of expenses that are deductible. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). Although Unlimited undoubtedly used some portion of the McLin Drive residence as its offices, there is no evidence in the record to support a finding of the fair rental value of the space used. The lack of arm's-length dealing between the parties and the absence of other evidence prevents any allowance for rental expense. Compare Feldman v. Commissioner, 84 T.C. 1, 7-8 (1985), affd. 791 F.2d 781 (9th Cir. 1986). Respondent's determination is sustained on this issue. (b) Expenses Related to Petitioners' Residence
During the years in issue, Unlimited deducted the following expenses relating to the residence on McLin Drive: 1982
1983
Utilities
$ 3,109.30 $ 3,540.25
Remodeling
18,901.83
---   Tractor lease
6,000.00
52.63
Security
5,030.00
150.00
Trash/Maintenance
480.00
115.50
Repairs
6,089.00
709.22
Total     $ 39,610.13
$ 4,567.60
Respondent disallowed these deductions in full. The expenses associated with petitioners' residence are inherently personal in nature, and, *390 as such, are nondeductible. Sec. 262. Petitioners testified that a portion of the expenses for utilities, tractor lease, security, trash, maintenance, and repairs were legitimate expenses of Unlimited. Petitioners have not presented any evidence as to the portion of these expenses allocable to business purposes. Thus, they have not proven that these expenses were deductible under section 162, rather than nondeductible personal, living or family expenses. See, e.g., Graves v. Commissioner, 88 T.C. 28, 38 (1987); Hynes v. Commissioner, 74 T.C. 1266, 1289 (1980). Petitioners testified that the remodeling expenses were paid to remodel their basement to be used as additional office space for Unlimited. Petitioners' assertions are not corroborated by any objective evidence. Other witnesses testified to their impression that the remodeling was for personal purposes. We decline to accept petitioners' general assertions without further supporting evidence of the business purpose of the claimed expenditures or the correct allocation between personal and business expenses. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. *391 a Memorandum Opinion of this Court; Sharwell v. Commissioner, 419 F.2d 1057, 1060 (6th Cir. 1969), affg. on this issue a Memorandum Opinion of this Court. Remodeling expenses, in any event, must ordinarily be capitalized and are not immediately deductible. Sec. 263(a). Respondent's determination is sustained on this issue. (c) Car Rental/Gasoline Expenses
In 1982, Unlimited deducted $ 7,000 purportedly paid to Nunhahda as rental expenses for two automobiles. Unlimited also deducted gasoline expenses of $ 1,660 and $ 1,040 in 1982 and 1983, respectively. Respondent disallowed these deductions in full. Unlimited presented no evidence to substantiate the business purpose of these deductions. Similarly, Unlimited presented no evidence to show that the amounts it claims as automobile rental expenses were reasonable or that any amounts were in fact paid. Petitioners argue, for the first time on brief, that these expenses related to transporting clients and to trips to the post office to mail client correspondence. Petitioners' statements in their brief do not *392 constitute evidence on this issue. Rule 143(b). Respondent's determination is sustained on this issue. (d) Travel Expenses
Unlimited deducted travel expenses of $ 18,186.99 and $ 3,558.55 in 1982 and 1983, respectively. Respondent disallowed these deductions in full. Although section 162(a) allows a deduction for ordinary and necessary expenses paid or accrued during the taxable year in carrying on a trade or business, section 274(d) imposes additional requirements for the substantiation of expenses for travel. Specifically, section 274(d) requires a taxpayer to substantiate by "adequate records or by sufficient evidence corroborating his own statement" the amount of the expense, the time and place of the travel, and the business purpose of the expense. Respondent has conceded that Unlimited has substantiated the amount, as well as the time and place, for travel expenses of $ 15,737.79 and $ 3,544.22 for 1982 and 1983, respectively. Respondent has not conceded that these expenditures were for ordinary and necessary business purposes. Petitioners testified that the travel *393 was business related, but they did not identify with specificity any business meeting or other event for which expenses were incurred. Their testimony is thus insufficient to support travel expense deductions. Unlimited did not present any records or other corroborative evidence to substantiate the business purpose of any travel expenses. Respondent's determination is sustained on this issue. (e) Returned Client Fees
Unlimited deducted payments of $ 29,000 and $ 5,950 in 1982 and 1983, respectively, for fees purportedly returned to clients. Respondent disallowed these deductions in full. Unlimited provided copies of canceled checks to substantiate payments of $ 28,500 made in 1982. Unlimited presented no evidence, however, that the amounts deducted as fees returned to clients were reported as taxable income during the years in issue or in previous years. Respondent's determination is sustained on this issue. (f) Miscellaneous Expenses
Respondent has conceded that Unlimited is entitled to the following deductions for other business expenses: 1982
1983
Phone/Telex
$ 5,437.52 $ 4,034.51 Mailing
974.81
824.16
Supplies
1,465.78
390.89
Legal Fees
26,976.00
7,689.00
Total     $ 34,854.11
$ 12,938.56
*394 Unlimited presented no evidence to substantiate the amount or business purpose of any expenses not conceded by respondent. Respondent's determination is sustained on this issue. Constructive Dividends - Issue (7)
Respondent contends that petitioners received constructive dividends for the office and automobile rental payments deducted by Unlimited as paid to Nunhahda. Likewise, respondent contends that petitioners received constructive dividends for the other expenses related to the McLin Drive residence, gasoline expenses, and travel expenses that were deducted by Unlimited. Where payments are made for the personal benefit of a shareholder by a corporation and such payments are not proximately related to the corporate business, the corporation is not entitled to deductions to the extent that they relate to such personal use, and the payments are includable in the shareholder's income as constructive dividends to the extent of the corporation's earnings and profits. Falsetti v. Commissioner, 85 T.C. 332, 356 (1985). Our holding that Unlimited's office and *395 automobile rental payments are not deductible does not automatically result in constructive dividends to petitioners. The test for constructive dividends in such circumstances is not only that the expenses be nondeductible to the corporation, but that the expenses also represent some economic gain or benefit to the shareholder. Falsetti v. Commissioner, 85 T.C. at 356-357. The Court of Appeals for the Sixth Circuit, to which this case is appealable, Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), has held that a shareholder is taxable to the full extent of the economic benefit received, regardless of whether the corporation had sufficient earnings and profits to make the payment taxable as a constructive dividend. See Weir v. Commissioner, 283 F.2d 675 (6th Cir. 1960), revg. a Memorandum Opinion of this Court; Benes v. Commissioner, 42 T.C. 358 (1964), affd. 355 F.2d 929 (6th Cir. 1966); but see Truesdell v. Commissioner, 89 T.C. 1280, 1296-1299 (1987). *396 The record in the instant cases contains no evidence of Unlimited's accumulated earnings and profits from years prior to the years in issue. In any event, it appears that Unlimited has sufficient current earnings and profits during 1982 and 1983 to support a constructive dividend analysis for the full extent of the economic benefits that petitioners received. Petitioners received an economic benefit with respect to personal automobile and gasoline expenses paid by Unlimited, as well as other expenses related to the McLin Drive residence. Petitioners also received an economic benefit with respect to the disallowed rental payments purportedly made by Unlimited to Nunhahda. Similarly, petitioners introduced no evidence to show that the unsubstantiated travel expenses had any business purpose or that the payments were not for their personal benefit. Respondent's determination that petitioners received constructive dividends must therefore be sustained. Diverted Income - Issue (8)
Respondent argues that petitioners diverted income of $ 39,588 from Unlimited in 1982. Respondent has conceded that Unlimited's gross receipts for 1982 totaled $ 394,000. Unlimited, however, *397 made deposits totaling only $ 354,411.98 during 1982. Respondent contends that petitioners diverted to their own purposes the gross receipts unaccounted for in Unlimited's records. Petitioners argue that the remaining unaccounted for gross receipts were used to pay Unlimited's business expenses in cash. Petitioners, however, presented no evidence to substantiate any of the expenses purportedly paid for in cash. Thus, petitioners have failed to prove that the unaccounted for gross receipts do not constitute income to them. Other Deductions - Issues (9) and (10)
Petitioners claimed a charitable contribution deduction of $ 150 and a residential energy credit of $ 753 on their 1982 tax return. Respondent disallowed these deductions. Petitioners presented no evidence to substantiate these deductions; accordingly, respondent's determination is sustained on these issues. Additions to Tax - Issues (6) and (11)
Respondent contends that petitioners' and Unlimited's underpayments of income tax for the years in issue are due to fraud. Section 6653(b) provides an addition to *398 tax of 50 percent of the amount of an underpayment if any part of the underpayment is due to fraud. The 50-percent addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an understatement of income. Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), *399 affd. 424 F.2d 639 (2d Cir. 1970). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Although we sustained to a large extent respondent's determinations of Unlimited's overstated deductions and petitioners' receipt of constructive dividends, we did so because his determination was not shown to be erroneous. Even assuming that the evidence, without regard to burden of proof, establishes *400 that petitioners and Unlimited underpaid their taxes for 1982 and 1983, the evidence is not clear and convincing as to fraudulent intent. Respondent cannot rely on petitioners' failure of proof to satisfy respondent's burden of presenting proof of fraud. Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), affg. and revg. a Memorandum Opinion of this Court. Respondent presented several witnesses who testified that, in their opinion, petitioners and Unlimited had defrauded them or their clients. A taxpayer's dishonesty in business transactions or willingness to defraud others may in some circumstances indicate a willingness to defraud the government. McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Those persons who participated in petitioners' loan guarantee activities, however, appear at least in part to have been victims of their own greed. We are unimpressed by the reliability of their opinions. *401 Respondent also presented other witnesses who attempted to show petitioners' lack of credibility (or creditworthiness), but the testimony related solely to collateral matters. This evidence is not persuasive in these cases of specific intent to evade tax on the part of petitioners or Unlimited. Respondent argues that petitioners used nominees or sham entities, Unlimited and Nunhahda, to create inflated deductions and thus fraudulently reduce their income tax liabilities. Respondent also contends that petitioners fabricated Nunhahda's corporate minutes to show tax-exempt, educational activities and fabricated the lease between Unlimited and Nunhahda, but no evidence supports these arguments. There are no other indicia or "badges" of fraud shown to be present here that may be taken into account in establishing fraudulent intent. Compare Solomon v. Commissioner, 732 F.2d 1459 (6th Cir. 1984), affg. a Memorandum Opinion of this Court; Zack v. Commissioner, T.C. Memo. 1981-700, affd. 692 F.2d 28 (6th Cir. 1982). Despite liberal use of opprobrious verbs and adjectives, respondent has failed to convince us that petitioners knew that *402 their system of minimizing the reported tax liability of themselves or of Unlimited was unlawful or that they intended to evade any tax known to be owing. Based on the entire record, we conclude that respondent has failed to prove fraud. Respondent also determined additions to tax under section 6661 for substantial understatements of income tax liability. Section 6661 imposes an addition to tax equal to 25 percent of any substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000 ($ 10,000 in the case of corporations). Sec. 6661(b)(1). Neither petitioners nor Unlimited has shown that they satisfied any of the exceptions under section 6661(b)(2)(B) or (C). Assuming that the underpayments recomputed under Rule 155 are substantial, we sustain respondent's determinations with respect to the additions to tax under section 6661(a). Finally, respondent determined that petitioners and Unlimited were *403 liable for increased interest on tax-motivated transactions for the entire underpayments for 1982 and 1983. Section 6621(c), formerly section 6621(d), imposes an increased rate of interest of 120 percent of the statutory rate imposed on underpayments for "substantial underpayments attributable to tax-motivated transactions." An underpayment is substantial for purposes of section 6621 if it exceeds $ 1,000. Sec. 6621(c)(2). A tax-motivated transaction includes sham or fraudulent transactions. Sec. 6621(c)(3)(A)(v). Respondent argues that petitioners, through Unlimited, engaged in tax-motivated transactions in the form of sham and fraudulent transactions. Specifically, respondent asserts that petitioners used their corporations, Nunhahda and Unlimited, to evade their tax liabilities and to defraud their other creditors. Respondent ignores the technical provisions of the statute and the requirement that an underpayment be attributable to a sham or fraudulent transaction. In this case the underpayments are, for the most part, only attributable to petitioners' failure of proof, or *404 to mischaracterization of personal expenses as business expenses. We have not found any justification for characterizing these items as sham or fraudulent. Compare Patin v. Commissioner, 88 T.C. 1086 (1987), affd. sub nom. without published opinion Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion Patin v. Commissioner, 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). Section 6621(c) does not apply to the underpayments in these cases. To reflect the foregoing and other issues settled by the parties, Decisions will be entered under Rule 155.
Footnotes
*. 50 percent of the statutory interest due on $ 194,736 and $ 33,384 for 1982 and 1983, respectively.↩
*. 50 percent of the statutory interest due on $ 157,184 and $ 13,576 for 1982 and 1983, respectively.↩