CHARLES GRAVES AND DOROTHY GRAVES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10318-85.     Filed January 7, 1987.

*E. Steeves Smith*, for the petitioners.
*Mary E. Pierce*, for the respondent.

## OPINION

COHEN, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes for 1981, 1982, and 1983 in the amounts of $12,886.58, $14,351.28, and $15,703.37, respectively. After concessions, the issues for determination are (1) whether payments received by petitioners under the Water Bank Program, 16 U.S.C. sec. 1301 et seq., are excludable from income under section 126(a)(3)[1] when received under a contract entered into prior to the effective date of section 126; (2) whether petitioners have proven that the payments received by them are otherwise excludable under section 126(a)(3); and (3) whether petitioners are entitled to deduct the expense of maintaining a guard dog.

All of the facts have been stipulated, and the facts set forth in the stipulation are incorporated herein by this reference. Petitioners were residents of Artesian, South Dakota, at the time they filed their petition. They filed joint individual income tax returns for 1981, 1982, and 1983.

### *Water Bank Act Payments*

On or about April 4, 1978, petitioners entered into an agreement with the U.S. Department of Agriculture to set aside 770 acres of pasture land for a wildlife habitat as part of the Water Bank Program described in 16 U.S.C. sec. 1301 et seq. (1982). The agreement provided for payments of $11,445 per year, which amount was increased to $13,085 in 1982.[2] The agreement specified a period from 1978 to 1987, and set forth the following provisions:

Each undersigned person agrees to participate in the Water Bank Program and to comply with the terms and conditions herein and the provisions of the regulations governing the program which are hereby made a part of the agreement. Each such person agrees that in accordance with the regulations (1) the designated acreage shown above will not be drained, burned, filled or devoted to such other use which destroys its wetland character, (2) no crop will be harvested from the designated acreage and such acreage will not be grazed during the agreement period except as provided in the regulations, (3) the designated

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

[2]The parties stipulated that the agreement provided for payments of $13,085 per year for 10 years, but the agreement, and the annual payment statement attached thereto, establish the facts as hereinabove found.

acreage will not be used as a source of irrigation water, as set-aside acreage or diverted acreage under another program, or to meet the farm conserving base requirement. Each person understands that he is jointly and severally liable for compliance with this agreement and for any refund or forfeiture of payments determined according to the regulations for failure to comply fully with the agreement. All persons entitled to share in the annual payments under this agreement are shown herein and the division of the annual payments is fair and equitable.

Persons signatory to the agreement further agree to carry out the following protective conservation measures:

Interseed alfalfa into fields 1a, 1h, 1j, 1m, 1q, and 1r.

The agreement was approved for the Secretary of Agriculture on April 4, 1978.

*Coverage of Section 126*

Section 126 was a part of the Revenue Act of 1978, Pub. L. 95-600, sec. 543(a), 92 Stat. 2888-2889. The statute enacting section 126 provided that the section "shall apply with respect to grants made under the programs after September 30, 1979." Pub. L. 95-600, sec. 543(d), 92 Stat. 2890.

The pertinent portions of the text of section 126 are as follows:

SEC. 126(a). GENERAL RULE.—Gross income does not include the excludable portion of payments received under—

\* \* \* \* \* \* \*

(3) The water bank program authorized by the Water Bank Act (16 U.S.C. 1301 et seq.).

\* \* \* \* \* \* \*

(b) EXCLUDABLE PORTION.—For purposes of this section—

(1) IN GENERAL.—The term "excludable portion" means that portion (or all) of a payment made to any person under any program described in subsection (a) which—

(A) is determined by the Secretary of Agriculture to be made primarily for the purpose of conserving soil and water resources, protecting or restoring the environment, improving forests, or providing a habitat for wildlife, and

(B) is determined by the Secretary of the Treasury or his delegate as not increasing substantially the annual income derived from the property.

(2) PAYMENTS NOT CHARGEABLE TO CAPITAL ACCOUNT.—The term "excludable portion" does not include that portion of any payment which is properly associated with an amount which is allowable as a

deduction for the taxable year in which such amount is paid or incurred.

(c) ELECTION FOR SECTION NOT TO APPLY.—

(1) IN GENERAL.—The taxpayer may elect not to have this section (and section 1255) apply to any excludable portion (or portion thereof).

(2) MANNER AND TIME FOR MAKING ELECTION.—Any election under paragraph (1) shall be made in the manner prescribed by the Secretary by regulations and shall be made not later than the due date prescribed by law (including extensions) for filing the return of tax under this chapter for the taxable year in which the payment was received or accrued.

(d) DENIAL OF DOUBLE BENEFITS.—No deduction or credit shall be allowed with respect to any expenditure which is properly associated with any amount excluded from gross income under subsection (a).

(e) BASIS OF PROPERTY NOT INCREASED BY REASON OF EXCLUDABLE PAYMENTS.—Notwithstanding any provision of section 1016 to the contrary, no adjustment to basis shall be made with respect to property acquired or improved through the use of any payment, to the extent that such adjustment would reflect any amount which is excluded from gross income under subsection (a).

On May 18, 1981, respondent adopted temporary regulations under section 126, T.D. 7778, 1981-1 C.B. 67, introduced with the following provision:

Sec. 16A.126-0 Effective dates.

These temporary regulations shall apply to any payments received under a contract signed by the taxpayer and the appropriate agency after September 30, 1979.

These regulations have not been made permanent.

Petitioners contend that section 126 applies to payments made after its effective date regardless of the date that the contract was entered into. Petitioners cite language in the committee reports accompanying enactment of section 126, as well as the committee reports accompanying amendment of that section by the Technical Corrections Act of 1979, Pub. L. 96-222, sec. 105(a)(7)(E), 94 Stat. 194, 221. The relevant reports refer only to payments and do not mention the date of the contract under which the payments are made. See H. Rept. 95-1880 (1978), 1978-3 C.B. (Vol. l) 521, 621-622; S. Rept. 96-498 (1979), 1980-1 C.B. 517, 555.

In addition, petitioners refer to certain statements contained in Internal Revenue Service Publication 225, Farmers' Tax Guide, stating that payments received after

September 1979 are excludable from gross income.[3] Petitioners contend that the temporary regulation quoted above describing the effective date is invalid as contrary to the purpose of the statute and the published position of the Internal Revenue Service.[4]

Respondent asserts that the temporary regulation controls the disposition of this case and that the Commissioner is not bound by erroneous information in Internal Revenue Service publications. We agree with the latter contention. See *Dixon v. United States*, 381 U.S. 68, 72-73 (1965); *Manocchio v. Commissioner*, 78 T.C. 989, 998-1001 (1982), affd. 710 F.2d 1400 (9th Cir. 1983).

We do not, however, agree with the interpretation placed by the parties on the temporary regulation. That regulation expressly refers to contracts signed after September 30, 1979. Read literally, therefore, the regulation simply does not apply to the payments in issue in this case. We can only speculate as to the reason for a rule applicable only to contracts entered into after the effective date of section 126, but an explanation would be that such a rule would allow the parties to take the new section into consideration in deciding on the terms to be included in their contracts. The language of section 16A.126-0, Temporary Income Tax Regs., 46 Fed. Reg. 27637 (May 21, 1981), does not necessarily mean, in any event, that payments received after September 30, 1979, pursuant to contracts entered into prior to September 30, 1979, are not covered by section 126.

The effective date language of section 16A.126-0, introduces section 16A.126-1(a), Temporary Income Tax Regs., which provides:

(a) *Introduction.* In general, section 126 provides that recipients of payments made after September 30, 1979 under certain conservation, reclamation and restoration programs may exclude all or a portion of those payments from income if the payments do not substantially increase the annual income derived by the taxpayer from the affected property. For purposes of this section, the term "payment" as used in

---

[3]Petitioners also rely on certain notes by petitioner Dorothy Graves attached to the stipulation. Those notes are hearsay, and respondent's objection in the stipulation on that ground is sustained. See Rule 801, Federal Rules of Evidence.

[4]Petitioners concede that if the regulation is valid, respondent would prevail on this issue. We are not required to accept an erroneous concession as a matter of law and, for reasons described in the text, we conclude that the regulation is subject to a different interpretation.

section 126 means payment of the economic benefit, if any, conferred upon the taxpayer upon receipt of the improvements. An increase in annual income is substantial if it exceeds the greater of 10 percent of the average annual income derived from the affected property prior to receipt of the improvement or an amount equal to $2.50 times the number of affected acres. The amount of gross income which a taxpayer realizes upon the receipt of a section 126 payment is the value of the section 126 improvement, reduced by the sum of the excludable portion and the taxpayer's share of the cost of the improvement (if any).

Section 16A.126-1(a), Temporary Income Tax Regs., consistent with the legislative history relied on by petitioners, refers only to *payments* made after September 30, 1979. The analysis of payments set forth in this portion of the temporary regulations, and those that follow it, confirm (1) the statutory emphasis on payments, not contracts, and (2) the logic of applying detailed rules only to contracts executed with awareness of the statutory provisions.

Our interpretation of these regulations, i.e., that they apply solely to contracts entered into after September 30, 1979, and are silent as to contracts entered into prior to that date, is consistent with our preference for interpreting regulations so as to uphold their validity. See *United Telecommunications, Inc. v. Commissioner*, 589 F.2d 1383, 1390 (10th Cir. 1978); *Steen v. Commissioner*, 61 T.C. 298, 304 (1973), affd. per curiam 508 F.2d 268 (5th Cir. 1975); *Dunn v. Commissioner*, 70 T.C. 715, 726 (1978), affd. 615 F.2d 578 (2d Cir. 1980). The substantive provisions of section 16A.126-1, Temporary Income Tax Regs., as applied to payments made after September 30, 1979, pursuant to contracts signed after that date, are not challenged here. Thus it is unnecessary to invalidate the temporary regulation. We need merely examine section 126 without regard to the regulation.

The language of section 126 refers only to *payments* and contains no reference to the date on which contracts were entered into. The express provision for elections in section 126(c) refers to the year of *payment*, thus negating the importance of the year of the contract.

Similarly, the Water Bank Act uses the phrase "payments or grants under the agreement" in a manner inconsistent with equating "grants" with "agreements" rather than with payments. See 16 U.S.C. sec. 1303(4) and (5) (1982).

The reason for using both "payments" and "grants" in that phrase is unclear, but the absence of functional differentiation is apparent.

Nothing we have found suggests that the phrase "grants made after September 30, 1979" in the Revenue Act of 1978 is the equivalent of "contracts signed after September 30, 1979," as contended by respondent. Respondent has directed us to no reason or authority in support of his position, other than the temporary regulation that on its face does not apply to contracts entered into prior to September 30, 1979. We have found no definition of "grants" equating that term with "contracts," as contrasted to an award of something that could be withheld. See, e.g., Webster's Third New International Dictionary (1976); Webster's Third New Collegiate Dictionary (1979); Webster's New World Thesaurus (1971).

Moreover, review of the terms of the agreement between petitioners and the Department of Agriculture and other provisions of the Water Bank Act suggests that, notwithstanding the 10-year period of the agreement, any "grants" thereunder are made annually. For example, 16 U.S.C. sec. 1304 (1982), provides:

SEC. 1304. Annual payment; adjustment

In return for the agreement of the owner or operator, the Secretary shall (1) make an annual payment to the owner or operator for the period of the agreement at such rate or rates as the Secretary determines to be fair and reasonable in consideration of the obligations undertaken by the owner or operator; and (2) bear such part of the average cost of establishing and maintaining conservation and development practices on the wetlands and adjacent areas for the purposes of this chapter as the Secretary determines to be appropriate. In making his determination, the Secretary shall consider, among other things, the rate of compensation necessary to encourage owners or operators of wetlands to participate in the water bank program. The rate or rates of annual payments as determined hereunder shall be increased, by an amount determined by the Secretary to be appropriate, in relation to the benefit to the general public of the use of the wetland areas, together with designated adjacent areas, if the owner or operator agrees to permit, without other compensation, access to such acreage by the general public, during the agreement period, for hunting, trapping, fishing, and hiking, subject to applicable State and Federal regulations. The rates of annual payment shall be adjusted, to the extent provided for in advance by appropriation Acts, in accordance with section 1302 of this title.

In this case, an adjustment was actually made in the fifth year of the agreement, apparently in accordance with the following provision of 16 U.S.C. sec. 1302 (1982).

These agreements shall be entered into for a period of ten years, with provision for renewal for additional periods of ten years each. The Secretary shall, beginning in 1980, reexamine the payment rates at the beginning of the fifth year of any such ten-year initial or renewal period and before the beginning of any renewal period, in the light of the then current land and crop values, and make needed adjustments in rates for any such initial or renewal period as provided in section 1304 of this title.
\* \* \*

Although there is no evidence in the record as to the reasons for failure to make any adjustments during the first 4 years of the agreement in this case or for the adjustment actually made in the fifth year, the annual adjustment language of the act supports the conclusion that the payments in issue in this case were "granted" during the years in which they were made and not at the time of execution of the contract.

For all of the foregoing reasons, we conclude that payments may be excludable from income under the terms of section 126(a)(3), even though the agreement under which payments are made was entered into prior to the effective date of provisions of the act by which section 126 became part of the Internal Revenue Code.

*Excludable Portion of Payments*

Respondent contends, in the alternative, that the payments in question are for rent and are not excludable under section 126(b). Respondent further contends that petitioners have not proven "that the payments were used for a section 126 improvement." Again, respondent relies on his temporary regulations, which on their face do not apply to payments received by petitioners in this case.

Petitioners, on the other hand, contend that the agreement between petitioners and the Department of Agriculture in evidence is sufficient to satisfy their burden of proof. That agreement, however, does not establish that the amounts in question constitute the "excludable portion" as defined in section 126(b)(1). Specifically, petitioners have not shown that the payments have been determined by the

Secretary of the Treasury or his delegate as not increasing substantially the annual income derived from the property. Petitioners assert that:

In this case it is undisputed that the land in question is being used by the government for wildlife habitat purposes as authorized by the Act. In addition, it is not contended by the Respondents [sic] that the income received was increased after taxpayers enrolled in the water bank program; taxpayers own returns show a decrease in income from the affected property after enrolling in this program.

We agree with petitioners that respondent has not clearly argued that the income received was increased after taxpayers enrolled in the program. There is, however, no evidence in the record from which a determination can be made as to whether or not the annual income derived from the property increased as a result of the payments. The record does not include tax returns for years prior to the agreement and, in any event, tax returns are hearsay as to income actually received by the taxpayers.

The critical determining factor is that petitioners have the burden of proving that the payments are excludable. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. The contract entered into prior to the enactment of section 126 does not constitute a prima facie case for exclusion under section 126(b). Even if the contract establishes the determination by the Secretary of Agriculture as set forth in section 126(b)(1)(A), there is no showing of the determination by the Secretary of the Treasury required by section 126(b)(1)(B). The temporary regulations (sec.16A.126-1, Temporary Income Tax Regs.) appear to be an interpretation as to how the Secretary of the Treasury or his delegate would make that determination. Assuming that the criteria set forth in the temporary regulations were applicable to the payments received by petitioners, petitioners have not proven the necessary facts to make such a determination.

Petitioners contend that the Internal Revenue Service examined petitioners' 1981 return and accepted it without requiring that the payments in question be included as income. They rely on a form letter dated February 16, 1984, stating:

We are pleased to tell you that our examination of your tax returns for the above periods shows no change is required in the tax reported. Your returns are accepted as filed.

That letter, however, preceded the statutory notice, dated February 8, 1985, that constitutes the determination of a deficiency with respect to 1981 and the later years. Attached to that letter in the stipulated exhibits is a letter containing petitioners' comments indicating a disagreement with respondent's records on some issues. Neither party has bothered to explain the context of this exhibit, and we decline to speculate on it as to what occurred between the date of that letter and the date of the notice of deficiency. The law is settled that respondent is not estopped from correcting errors of law as to the taxability of income, even retroactively. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183-184 (1957); see *Dixon v. United States*, 381 U.S. 68 (1965); *Easter v. Commissioner*, 338 F.2d 968 (4th Cir. 1964), affg. per curiam a Memorandum Opinion of this Court. Although this Court sometimes determines questions of whether estoppel can be applied against the Commissioner, in this case petitioners have not shown the necessary elements of estoppel. See generally *Schuster v. Commissioner*, 312 F.2d 311, 317-318 (9th Cir. 1962); *Boulez v. Commissioner*, 76 T.C. 209 (1981); *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617-618 (1977); *Hudock v. Commissioner*, 65 T.C. 351, 363 (1975). Even the Internal Revenue Service Publication 225 brochures, on which petitioners rely, set forth the requirement of a determination that the excludable payments do not substantially increase the annual income from the property for which the payments are made.

Moreover, petitioners have conceded that they deducted on their returns farm expenses relating to the income that they contend is excludable and that they have thus claimed double benefits prohibited by section 126(d). In the stipulation, the parties agreed to the amounts that have been substantiated and are deductible if the payments are not excludable. The amounts claimed by petitioners on their 1981 return exceeded the amounts that petitioners now agree are deductible if the Court finds that the payments in question are taxable income to petitioners. We are not

persuaded by petitioners' argument that they are entitled to an equitable determination that their return for 1981 should be accepted as filed when the stipulation establishes that the return was incorrect as filed.

## Guard Dog Expenses

Petitioners contend they are entitled to deduct $96.72 paid in 1982 and $181.96 paid in 1983 for food and supplies for a German Shepherd guard dog. Petitioners have the burden of proving that these items constitute deductible expenses. *Welch v. Helvering, supra*; *New Colonial Ice Co. v. Helvering*, 292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure. They contend that they have satisfied their burden by the stipulation that the animal was a guard dog. They have not, however, presented any evidence as to the nature of the property being guarded, or whether the dog was guarding their persons as opposed to property. Thus, they have not proven that the expenses were deductible under section 162 or 212, rather than nondeductible personal, living, or family expenses. Sec. 262. Statements in petitioners' brief with respect to the nature of the items are not evidence and are disregarded. Rule 143(b), Tax Court Rules of Practice and Procedure. Their statement that the tax returns show business property that was guarded is frivolous.

Because of concessions by respondent in the stipulation,

*Decision will be entered under Rule 155.*