CHARLES GRAVES AND DOROTHY GRAVES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10318-85. Filed July 7, 1987.

---

*E. Steeves Smith*, for the petitioners.
*Mary E. Pierce*, for the respondent.

SUPPLEMENTAL OPINION

COHEN, *Judge*: On January 7, 1987, we filed our opinion at 88 T.C. 28 (1987), and directed that decision be entered under Rule 155. In that opinion we held, in part, that petitioners had not shown that the payments in question constituted the "excludable portion" of payments under the Water Bank Program, 16 U.S.C. sec. 1301 et seq., as defined in section 126(b)(1).[1] Specifically, petitioners had not shown that the payments had been determined by the Secretary of the Treasury or his delegate as not increasing substantially the annual income derived from the property.

Thereafter, petitioners filed a motion to vacate or revise decision under Rule 161. In that motion, petitioners asserted that the question of increase in annual income derived from the property had never been raised by respondent and that, therefore, petitioners had been misled into fully stipulating the case without introducing evidence concerning the income. Subsequently, the parties filed a stipulation of undisputed facts concerning petitioners' income for 1975, 1976, and 1977. As stipulated, the income petitioners derived from the subject property during the 3 years prior to their agreement with the U.S. Department of Agriculture, described in detail in our prior opinion, was more than the amounts received under the Water Bank Program. There is no evidence that the payments related to capital improvements subject to depreciation.

Respondent contends that, regardless of the amounts of the payments, they are not excludable because they are rents and not "cost-sharing payments" covered by section 126. Respondent relies on the title of section 126 (Certain

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

Cost-Sharing Payments), the legislative history, and his temporary regulations. Sec. 16A.126-O, Temp. Income Tax Regs., T.D. 7778, 1981-1 C.B. 67, 46 Fed. Reg. 27637 (May 21, 1981). In our prior opinion, we held that the temporary regulations, by their express terms, do not apply to the payments in question here.

Petitioners do not dispute that the payments may be characterized as rent. They, however, contend that section 126 is not limited to "cost-sharing payments." Moreover, they argue, petitioners qualify because the cost of maintaining their property as a wildlife habitat is shared by them to the extent that they have given up income that otherwise could be earned from such property. Petitioners also attack the validity of the regulations.

The temporary regulations do not apply to the payments in issue here because they expressly apply to payments received under contracts signed after September 30, 1979. As in our prior opinion, therefore, our answer to the question presented must be based on examination of section 126 without regard to the regulations.

The context of this dispute raises several principles of statutory construction. First, exemptions and exclusions from taxable income should be construed narrowly, and the taxpayers must bring themselves within the clear scope of the exclusions. See *Commissioner v. Jacobson*, 336 U.S. 28 (1949); *Omaha Public Power District v. O'Malley*, 232 F.2d 805, 809 (8th Cir. 1956); *Frederick Smith Enterprise Co. v. Commissioner*, 167 F.2d 356 (6th Cir. 1948). Second, the title of an act may be considered in interpreting a statute. *Maguire v. Commissioner*, 313 U.S. 1 (1941); *Keeble v. Commissioner*, 2 T.C. 1249, 1252-1253 (1943). Third, statutes must be construed in light of their purpose. *United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940); *Sachs v. Commissioner*, 88 T.C. 769 (1987), and cases cited therein.

In this case, the foregoing principles all lead to the same result. Section 126 provides an exclusion or an exception to the general rule of taxability set forth in section 61. The title of section 126 is "certain cost-sharing payments." The legislative history of section 126 discloses that the purpose of the exclusion related only to cost-sharing payments for

depreciable assets. See H. Rept. 95-1880 (1978), 1978-3 C.B. (Vol. 1) 521, 621-622; S. Rept. 96-498 (1979), 1980-1 C.B. 517, 555 (explaining the Technical Corrections Act of 1979, Pub. L. 96-222, sec. 105(a)(7)(E), 94 Stat. 194, 221).

Petitioners and respondent both quote statements of Senators Culver and Wallop, sponsors of the legislation, set forth in the Congressional Record, with respect to the reason for section 126. See 124 Cong. Rec. 25118-25119 (Aug. 9, 1978), 26398-26399 (Aug. 16, 1978), 33456-33457 (Oct. 4, 1978), 34728-34733 (Oct. 9, 1978). In none of those materials is there any reference to payments other than cost-sharing payments. The essence of the discussion is summarized by the following passage from a statement by Senator Culver:

Under current tax law, however, Federal and State cost-sharing payments for these purposes are considered as gross income to the farmer and subsequently, for tax purposes, are treated as earnings. On the expense side of the ledger, the Internal Revenue Service (IRS) defines expenditures on certain conservation measures as "deductible expenditures." Others are classified as expenditures on "depreciable assets."

In the case of "deductible expenditures," the increase in gross income a farmer experiences from having cost-sharing payments included in his gross income is offset by an equivalent deduction in the same tax year with no increase in his tax liability. In the case of payments which are spent on "depreciable assets," however, only a portion of the increased gross income may be deducted in that tax year. The farmer receiving assistance from the Government for building these structures must include in his gross income for that year the total amount of money received but can deduct only the depreciable portion of the payment. If he can recover, in the first year, through annual allowances for depreciation, only 10 percent of that public assistance, he will have to pay taxes on the other 90 percent and wait until future years to recover those taxes.

[124 Cong. Rec. 34732 (1978).]

Consistent with the rationale expressed and the purpose of narrowing the tax benefit to the tax inequity perceived, section 126 includes the following specific provisions:

(b)(2) PAYMENTS NOT CHARGEABLE TO CAPITAL ACCOUNT.—The term "excludable portion" does not include that portion of any payment which is properly associated with an amount which is allowable as a deduction for the taxable year in which such amount is paid or incurred.

\* \* \* \* \* \* \*

(d) DENIAL OF DOUBLE BENEFITS.—No deduction or credit shall be allowed with respect to any expenditure which is properly associated with any amount excluded from gross income under subsection (a).

(e) BASIS OF PROPERTY NOT INCREASED BY REASON OF EXCLUDABLE PAYMENTS.—Notwithstanding any provision of section 1016 to the contrary, no adjustment to basis shall be made with respect to property acquired or improved through the use of any payment, to the extent that such adjustment would reflect any amount which is excluded from gross income under subsection (a).

Nowhere in any of the materials is there any indication that Congress intended to relieve from normal income tax obligations an outright payment for the use of land where there is no capital improvement subject to depreciation. All of the indications are to the contrary. Moreover, it is apparent that "cost-sharing" does not mean, as contended by petitioners, reducing the amount of income received from property by entering into an agreement with the United States.

Thus petitioners have not persuaded us that the payments in question come within the exclusionary language of section 126. Those payments are therefore subject to income tax under section 61(a)(5).

Although our conclusion that section 126 applies only to cost-sharing payments somewhat supports the scope of the temporary regulations, we are obviously expressing no opinion on the validity of the specific provisions of those regulations or on the manner in which they have been put into effect.

Petitioners' motion has been treated as a motion to reconsider and revise our prior opinion and to reopen the record. Reconsideration is granted; the record is reopened for the purpose of receiving the stipulation; but the result of our prior opinion is unchanged.

*An appropriate order will be issued.*