T.C. Summary Opinion 2004-169

UNITED STATES TAX COURT

ROLAND GYULA SZASZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13460-03S.            Filed December 9, 2004.

Roland Gyula Szasz, pro se.

<u>Valerie L. Makarewicz</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 1998
and 1999, the taxable years in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure.  All monetary
amounts are rounded to the nearest dollar.

should not be cited as authority.

Respondent determined deficiencies in petitioner's Federal income taxes of $8,924 and $10,084 for 1998 and 1999, respectively.

After concessions,[2] the issues for decision are: (1) Whether the statute of limitations bars the assessment of the deficiencies for 1998 and 1999; if the statute of limitations is not a bar, (2) whether petitioner is entitled to dependency exemption deductions for his parents in 1998 and 1999; (3)

---

[2] Petitioner concedes: (1) For 1998, he is not entitled to deduct a dependency exemption for his sister, Christina Szasz; (2) for 1999, he received unreported income in the aggregate amount of $5,512; and (3) he is not entitled to the following Schedule C, Profit or Loss From Business, deductions (to the limited extent provided herein) that were disallowed by respondent:

| Expense | 1998 | 1999 |
|---|---|---|
| Advertising | $384 | $312 |
| Depreciation | 5,057 | 1,980 |
| Mortgage interest | -0- | 796 |
| Other interest | -0- | 1,000 |
| Legal and professional services | 78 | 94 |
| Office expense | 235 | 258 |
| Rent | 664 | 3,577 |
| Repairs and maintenance | -0- | 191 |
| Supplies | 261 | 283 |
| Taxes and licenses | 1,195 | 697 |
| Travel, meals, and entertainment | -0- | 185 |
| Other expenses--telephone | 75 | 78 |
| Other expenses--points | -0- | 675 |

Respondent concedes: (1) For 1998 and 1999, petitioner is entitled to deduct car and truck expenses in the amounts of $6,763 and $6,876, respectively, as claimed on petitioner's Schedules C; and (2) for 1999, petitioner is entitled to deduct mortgage interest of $4,855, taxes and licenses of $931, and points of $417 as Schedule A, Itemized Deductions, expenses, rather than as Schedule C expenses as claimed and disallowed in the notice of deficiency.

whether petitioner is entitled to head-of-household filing status in 1998 and 1999; and (4) whether petitioner is entitled to various Schedule C, Profit or Loss From Business, deductions in 1998 and 1999.

An adjustment to the amount of petitioner's itemized deductions is purely a mechanical matter, the resolution of which is dependent on our disposition of the issues for decision.

I. Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Thousand Oaks, California.

A. Petitioner's Occupation

Until the real estate market crash in California in 1997, petitioner worked full time as a real estate agent in Victorville, California. In mid-1997, petitioner relocated to Thousand Oaks to find a better job, and he started working full time as a real estate agent for Fred Sands Brown Realty (Fred Sands). By 1998, petitioner was working only part time at Fred Sands during the evenings and on the weekends. At all relevant times, petitioner maintained an office at Fred Sands and focused his real estate activity on listings and investors in both Victorville and Thousand Oaks. Victorville is located

approximately 130-140 miles from Thousand Oaks.

In addition to his part-time job with Fred Sands, petitioner worked full time as a salesman for Cardservice International (Cardservice) in the Thousand Oaks area. In 1998 and 1999, petitioner worked 40 hours a week at Cardservice from 6:00 a.m. until 2:30 p.m.

B. Petitioner's Place of Residence

In 1994, petitioner purchased a single family residence at 13040 Caspian Drive in Victorville (Victorville home). Petitioner maintained the Victorville home as his place of residence until mid-1997 when he relocated to Thousand Oaks. Petitioner retained the Victorville home because he was unable to sell it in 1997 without sustaining a significant loss.

When petitioner relocated to Thousand Oaks in mid-1997, he initially lived with his parents, Lorant and Elizabeth Szasz (individually referred to as Lorant and Elizabeth), in their home in Thousand Oaks.

In September 1997, petitioner moved out of his parents' home and rented a guest house above a two-car garage at 1350 Camino Cristobal in Thousand Oaks (Camino Cristobal). The guest house had one bedroom, one bathroom, a kitchenette, and a "great room", which was a combination living room and dining room. The great room contained a dining table, a couch, and a desk. Petitioner used the great room both to entertain personal guests and family

and to meet with clients from Fred Sands.  In September 1998, petitioner and his then-girlfriend signed a new lease for Camino Cristobal, at which time petitioner's girlfriend began to reside with him.

In 1998 petitioner paid expenses for Camino Cristobal, which amounts remain in issue, as follows:  (1) Rent of $11,100, (2) repairs and maintenance of $141, (3) utilities of $510, and (4) telephone of $498.

In mid-1999, petitioner moved to a single family residence in Moorpark (which is in the Thousand Oaks vicinity) (Moorpark home) under a lease with an option to purchase.[3]  The Moorpark home includes approximately 1,100 square feet and has two bedrooms, two bathrooms, a kitchen, a living room, and a dining room.  Petitioner used the second bedroom as an office.  (For convenience, we refer to Camino Cristobal and the Moorpark home collectively as the Thousand Oaks home.)  In 1999 petitioner paid expenses for the Thousand Oaks home, which amounts remain in issue, as follows:  (1) Rent of $5,550, (2) utilities of $549, and (3) telephone of $544.

## C.  Petitioner's Family Household

In November 1997, petitioner's father, Lorant, became disabled.  Before his disability, Lorant worked at LERC

---

[3]  At a time not disclosed in the record, petitioner purchased the Moorpark home and currently resides there.

Enterprises, Inc./Hungarians' Sunday (LERC), a family corporation that Lorant established in 1981.[4]  At all relevant times, Lorant was the director and secretary-treasurer, and Elizabeth was the president.

Sometime in 1997, LERC lent approximately $77,640 to Lorant, Elizabeth, and petitioner, collectively.[5]  In March 1998, Lorant began receiving approximately $753 in Social Security disability benefits.  In 1998 and 1999, Lorant and Elizabeth did not receive a salary from LERC.

Because of financial constraints, Lorant and Elizabeth sold their home in Thousand Oaks in 1998 and moved into petitioner's Victorville home.  At all relevant times, Lorant and Elizabeth resided by themselves in the Victorville home.

D.  Petitioner's 1998 and 1999 Income Tax Returns

Lorant prepared petitioner's 1998 and 1999 income tax returns.  Petitioner executed his 1998 income tax return on February 14, 1999, and filed it on or before April 15, 1999.  Petitioner executed his 1999 income tax return on February 11, 2000, and filed it on or before April 15, 2000.

---

[4]  LERC's business operations consisted of owning several properties, a printing company, and a mailing company.

[5]  The record does not disclose what part of the total was lent to each individual, but the record indicates that a portion was lent to petitioner to buy a car.  By the end of the taxable year 1998, there was an outstanding loan of $69,230 to LERC's stockholders.

During the years in issue, petitioner was not married, but he filed as head-of-household claiming his parents as dependents.

Petitioner attached, inter alia, a Schedule C to each of his income tax returns for 1998 and 1999.  On each Schedule C, petitioner identified his business activity code as 531210, signifying an office of real estate agents and brokers.  On each Schedule C, petitioner claimed various deductions.  After concessions, and as relevant to the issues for decision, those deductions were as follows:

|                        | 1998     | 1999    |
|------------------------|----------|---------|
| Rent                   | $11,100  | $5,550  |
| Repairs and maintenance| 141      | -0-     |
| Utilities              | 510      | 549     |
| Telephone              | 498      | 544     |

E.  Examination of Petitioner's Returns

At a time not disclosed in the record, respondent commenced an examination of petitioner's 1998 and 1999 returns.

On July 23, 2000, petitioner executed Form 2848, Power of Attorney and Declaration of Representative, appointing Lorant as his representative concerning income tax matters for the taxable years 1993 through 2002.  The Form 2848 specifically authorized Lorant to sign consents.  Lorant signed the Form 2848 on July 26, 2000.  Respondent received the Form 2848 on September 12, 2000.

On July 17, 2001, Lorant executed on behalf of petitioner a Form 872, Consent to Extend the Time to Assess Tax, consenting to extend the period of limitation for 1998 to November 31, 2002

(first consent).  Lorant signed the first consent as "Lorant Szasz, P.O. for Roland Szasz".  Respondent received the first consent on July 19, 2001, and respondent's authorized official countersigned it on July 23, 2001.

On August 3, 2001, Lorant executed on behalf of petitioner another Form 872 consenting to extend the period of limitation for 1998 to December 31, 2002 (second consent).  Lorant signed the second consent as "Lorant Szasz, P.A. for Roland Szasz".  Respondent received the second consent on August 9, 2001, and respondent's authorized official countersigned it on that same day.

On December 24, 2001, Lorant executed on behalf of petitioner another Form 872 consenting to extend the period of limitation for 1998 to December 31, 2002 (third consent).[6]  Lorant signed the third consent as "Lorant Szasz, P.O.A. for Roland Szasz".  Respondent's authorized official countersigned it on December 28, 2001.

For reasons not fully explained in the record, Lorant became unable to continue to represent petitioner in the audit.  Consequently, in or about April 2002, Lorant hired on behalf of petitioner a certified public accountant, Scott Penn (Mr. Penn),

---

[6]  There is no explanation in the record why Lorant executed two separate Forms 872, Consent to Extent the Time to Assess Tax, consenting to extend the period of limitations to the same date of Dec. 31, 2002.

to handle petitioner's income tax matters for 1998 and 1999. Petitioner was aware that Lorant hired Mr. Penn on petitioner's behalf, and petitioner approved the hiring of Mr. Penn. On April 22, 2002, Lorant executed on behalf of petitioner a Form 2848 appointing Mr. Penn as petitioner's representative for the taxable years 1997 through 2003. Lorant signed the Form 2848 as "Lorant Szasz, P.O.A. for Roland Szasz". Mr. Penn signed the Form 2848 on the same day.

From about April 2002 through May 2003, Mr. Penn corresponded with respondent's agent on approximately 40 occasions. As a matter of practice, Mr. Penn would then correspond with Lorant, who would relay all the information to petitioner. When Mr. Penn was unable to persuade respondent to accept petitioner's returns as filed, he executed on October 15, 2002, a Form 872 consenting to extend the period of limitations for 1998 and 1999 to June 30, 2003 (last consent). Mr. Penn signed the last consent as petitioner's representative. Respondent's authorized official countersigned it on October 21, 2002.

F.  Notice of Deficiency

On May 14, 2003, respondent issued to petitioner a notice of deficiency for 1998 and 1999. Respondent determined that petitioner is not entitled to claim his parents as dependents, that petitioner is not entitled to head-of-household filing

status, and that petitioner is not entitled to deduct the

following Schedule C expenses:

| Expense | 1998 | | | 1999 | | |
|---|---|---|---|---|---|---|
| | Claimed | Allowed | Disallowed | Claimed | Allowed | Disallowed |
| Advertising | $384 | -0- | $384 | $312 | -0- | $312 |
| Car and truck expenses | 6,763 | $1,662 | 5,101 | 6,876 | $1,662 | 5,214 |
| Depreciation | [1]5,935 | 878 | 5,057 | 2,858 | 878 | 1,980 |
| Insurance | 1,452 | 2,180 | -0- | 1,583 | 2,180 | -0- |
| Mortgage interest | -0- | -0- | -0- | 5,651 | -0- | 5,651 |
| Other interest | -0- | -0- | -0- | 1,000 | -0- | 1,000 |
| Legal and professional services | 78 | -0- | 78 | 94 | -0- | 94 |
| Office expense | 235 | -0- | 235 | 258 | -0- | 258 |
| Rent for other business property | 11,774 | -0- | 11,774 | 9,127 | -0- | 9,127 |
| Repairs and maintenance | 112 | -0- | 112 | 191 | -0- | 191 |
| Supplies | 261 | -0- | 261 | 283 | -0- | 283 |
| Taxes and licenses | 1,195 | -0- | 1,195 | 1,628 | -0- | 1,628 |
| Travel | -0- | -0- | -0- | 185 | -0- | 185 |
| Utilities | 510 | -0- | 510 | 538 | -0- | 538 |
| Telephone | 573 | -0- | 573 | 622 | -0- | 622 |
| Points | -0- | -0- | -0- | 1,092 | -0- | 1,092 |
| Total expenses | 29,290 | 4,720 | [2]24,570 | 32,298 | 4,720 | [3]27,578 |

[1]  It appears that petitioner transposed this amount, which should have been $5,953 as claimed on Form 4562, Depreciation and Amortization.

[2]  The total amount disallowed is $25,280.  There is no explanation for this discrepancy.

[3]  The total amount disallowed is $28,175.  There is no explanation for this discrepancy.

### G.  Petition

Petitioner timely filed a petition with the Court disputing respondent's determinations.  Paragraph 4 of the petition states:

> 1.  I am requesting the "Head of the Household" status be reinstated!  Reason:  my father has been disabled since 1997.  Since then he has received less than $800.00/m in income to live on.  Out of this my parents spend approx. half, $400.00/m on insurance and medications.  With today's cost of living it is impossible to even get by on 400 per month, per married couple.  I have been providing shelter and support since my father became disabled.  2.  Please reinstate my original tax declaration!  I have responded in time to any inquiry that was issued by the IRS.  After my initial responses the IRS changed the accounting to

"Alternative Minimum Tax".[7]  3.  Please consider that after I agreed to "Consent to Extend the Time to Assess Tax", the IRS response was received 4 months after the due date of December 31, 2002!

II.  Discussion

A.  Statute of Limitations

We must first decide whether the statute of limitations bars the assessment of the deficiencies in issue.  In doing so, we must decide whether the last consent is valid for 1998 and 1999. If it is valid, then the period for assessment of income tax was extended and respondent's notice of deficiency for 1998 and 1999 was timely.  If, however, the last consent is invalid, then the period for assessment of income tax expired before respondent issued the notice of deficiency.

Generally, an income tax must be assessed within 3 years after the applicable return is filed.  Sec. 6501(a).  In this regard, a return filed before the due date is considered as having been filed on the date it was due.  Sec. 6501(b)(1).  This period may be extended, however, if the taxpayer and the Commissioner consent in writing, before the expiration of the limitations period, to extend the 3-year period of limitations. Sec. 6501(c)(4)(A).  The Commissioner and the taxpayer may extend the period so agreed upon by subsequent agreements in writing

---

[7]  We note that respondent did not determine in the notice of deficiency that petitioner is subject to the alternative minimum tax.  Therefore, we need not address petitioner's allegation.

made before the expiration of the period previously agreed upon.
Id.

The bar of the statute of limitations on assessment is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proving its applicability. Rules 39, 142(a). If the taxpayer makes a prima facie case proving the filing date of his or her income tax return and the expiration of the statutory period prior to the mailing of the notice of deficiency, the burden of going forward with the evidence shifts to respondent. Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Respondent may discharge this burden by showing that the parties executed a written consent, valid on its face, extending the period of limitations for assessment and that the notice of deficiency was mailed prior to the expiration of the extended period. Adler v. Commissioner, 85 T.C. 535, 541 (1985). If respondent introduces an apparently valid consent and the taxpayer asserts that such consent is ineffective, the burden of going forward again shifts back to the taxpayer to affirmatively show the invalidity of the written consent. Id. The burden of proof; i.e., the burden of ultimate persuasion, however, always remains with the party who pleads that the assessment is barred by the statute of limitations. Id. at 540.

Petitioner timely filed his 1998 and 1999 income tax returns, and the period of limitations with respect to those

years ordinarily would have expired on April 15, 2002, and April 15, 2003, respectively. Respondent contends, however, that petitioner duly executed a consent, which is valid on its face, extending the period of limitations to June 30, 2003, and that respondent issued the notice of deficiency before such date.

When a consent appears regular on its face and in accordance with law, we generally presume that the parties who signed the consent acted within the scope of their authority. Concrete Engg Co. v. Commissioner, 19 B.T.A. 212, 221 (1930), affd. 58 F.2d 566 (8th Cir. 1932); Ryan v. Commissioner, T.C. Memo. 1991-49. The last consent properly identifies petitioner as the taxpayer and bears the signature of petitioner's representative, Mr. Penn, who acted pursuant to a valid Form 2848. Furthermore, respondent's authorized representative executed the last consent before the expiration of the period of limitations. Therefore, respondent has introduced a consent form that appears to be valid, and petitioner must prove that the last consent is invalid. See Ryan v. Commissioner, supra; Lefebvre v. Commissioner, T.C. Memo. 1984-202, affd. per curiam 758 F.2d 1340 (9th Cir. 1985).

Petitioner contends that the last consent is invalid because Mr. Penn did not have the requisite authority to execute an extension on petitioner's behalf. In this regard, petitioner

contends that he never delegated such authority to Mr. Penn.[8]  We reject petitioner's contention.

Petitioner, acting through Lorant, hired Mr. Penn specifically to resolve the audit of petitioner's taxable years 1998 and 1999.  On April 22, 2002, petitioner, again acting through Lorant, executed a Form 2848 appointing Mr. Penn as his personal representative with respect to petitioner's income tax matters for the taxable years 1997 through 2003.  We consider significant that the Form 2848 specifically authorized the representative to sign consents.  Thus, we find that petitioner gave Mr. Penn authority to represent him before the Internal Revenue Service, including the execution of a consent form.

Petitioner contends, however, that Mr. Penn was required to obtain approval from petitioner before executing any consent to extend the period of limitations.  Petitioner further maintains that had Mr. Penn asked for approval to execute the last consent, petitioner would not have authorized such action.  However, there is nothing on the Form 2848 or in the record to suggest that Mr. Penn did not have the requisite authority to execute the last consent.  Thus, petitioner has failed to prove that Mr. Penn acted outside the scope of his authority.

----

[8]  Petitioner does not contend that Lorant lacked authority to execute the first three consents on his behalf, nor does petitioner contend that Lorant lacked authority to hire Mr. Penn as petitioner's representative.

Consequently, Mr. Penn properly executed, pursuant to a Form 2848, the last consent to extend the period of limitations for 1998 and 1999 to June 30, 2003. Because respondent issued the notice of deficiency before such date, the statute of limitations does not bar the assessment of any deficiency in income tax for 1998 and 1999.

B.  Burden of Proof

As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

By virtue of section 7491(a), however, the burden of proof may, under certain circumstances, be shifted to the Commissioner. On the basis of the record, we hold that section 7491(a) does not operate to shift the burden of proof to respondent because:  (1) Petitioner did not introduce credible evidence with respect to any factual issue relevant to ascertaining his liability; (2) he did not comply with the requirements to substantiate his deductions; and (3) he did not maintain all required records. Sec. 7491(a); Higbee v. Commissioner, 116 T.C. 438 (2001).  In view of the foregoing, we proceed with our analysis on the basis that petitioner bears the burden of proving that respondent's determinations are erroneous.

C.  Dependency Exemption Deductions

On each of his returns for 1998 and 1999, petitioner claimed dependency exemption deductions for both of his parents.  In the notice of deficiency, respondent denied the deductions.

A taxpayer is entitled to a deduction for an exemption for each individual who qualifies as the taxpayer's dependent under sections 151 and 152.  Secs. 151(a), (c), 152.  The term "dependent" includes a taxpayer's parents over half of whose total support is received from the taxpayer for the calendar year.  Sec. 152(a)(4).  "The term 'support' includes food, shelter, clothing, medical and dental care, education, and the like."  Sec. 1.152-1(a)(2)(i), Income Tax Regs.

Petitioner contends that he contributed over half of his parents' total support.  In support of this contention, petitioner introduced at trial a worksheet indicating that his parents' sole source of income was Lorant's annual Social Security benefits of approximately $9,036, that his parents' total support cost was $34,625, and that petitioner contributed $25,588 towards his parents' support.[9]  We do not find the worksheet to be reliable because petitioner did not have personal knowledge of the information in the worksheet, which was completed by Lorant, and petitioner did not present any testimony

_____

[9]  We note that the worksheet erroneously counted rent for the Victorville home as an expense of the entire household and as another separate expense of the dependents.

or other documentary evidence to explain the types of expenses, the amounts he paid, and the frequency of the expenses. Moreover, there is evidence in the record to suggest that Lorant and Elizabeth also may have received some support from LERC during the years in issue, which information was not reflected in the worksheet nor refuted at trial.

Although we do not doubt that petitioner may have contributed towards the support of his parents, petitioner failed to show the extent of such support. On the basis of the record, we decline to accept petitioner's unsupported assertion that he provided over half of his parents' support. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Respondent's determination on this issue is therefore sustained.

D. Head-of-Household Filing Status

On each of his returns for 1998 and 1999, petitioner listed his filing status as head-of-household. In the notice of deficiency, respondent changed petitioner's filing status to single.

A taxpayer is considered a head-of-household if either: (1) The taxpayer maintains as his or her home a household that constitutes, for more than one-half of the taxable year, the principal place of abode of an individual who qualifies as the taxpayer's dependent under sections 151 and 152, or (2) the taxpayer maintains a household that constitutes the principal

place of abode of the taxpayer's father or mother but only if such parent qualifies as the taxpayer's dependent under sections 151 and 152. Sec. 2(b)(1).

We have already held that petitioner is not entitled to deductions for exemptions for his parents for 1998 and 1999 because they do not qualify as petitioner's dependents under sections 151 and 152. Accordingly, petitioner does not qualify as a head-of-household for either of those years. Sec. 2(b)(1). Because petitioner was unmarried, his filing status is "single", see secs. 1(c), 3(c), and he is entitled to the standard deduction applicable to that particular filing status, see sec. 63(c). Accordingly, we sustain respondent's determination on this issue.

### E. Schedule C Deductions

As relevant to the issues for decision, petitioner claims that he is entitled to deductions for business expenses as follows: (1) Rent of $11,100 and $5,550 for 1998 and 1999, respectively, (2) repairs and maintenance of $141 for 1998, (3) utility expenses of $510 and $549 for 1998 and 1999, respectively, and (4) telephone expenses of $498 and $544 for 1998 and 1999, respectively.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v.

Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933). A taxpayer is required to maintain records sufficient to substantiate his or her claimed deductions. Sec. 6001. This includes the burden of substantiating the amount and purpose of the items claimed. Id.; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 262(a), however, generally precludes deductions for personal, living, or family expenses. Section 280A further disallows business expenses with respect to the use of a dwelling unit used by the taxpayer during the taxable year as a residence. Sec. 280A(a).

Section 280A(c), however, permits the deduction of expenses allocable to a portion of the dwelling unit that is used exclusively and on a regular basis as either: (1) The principal place of business for the taxpayer's trade or business, or (2) a place of business that is used by clients or customers in meeting or dealing with the taxpayer in the normal course of the taxpayer's trade or business. Sec. 280A(c)(1). In determining whether a home office is a taxpayer's principal place of business, we must consider (1) the amount of time spent at each location, and (2) the relative importance of the activities

performed at each location.  See Commissioner v. Soliman, 506 U.S. 168, 174 (1993).

Petitioner first contends that the Victorville home was his personal residence and that the Thousand Oaks home was his place of business away from home.  Thus, petitioner maintains that he is entitled to expenses for rent, repairs and maintenance, utilities, and telephone associated with the Thousand Oaks home. Petitioner's contention is not supported by the evidence.

The record is clear that the Thousand Oaks home, rather than the Victorville home, was petitioner's personal residence and tax home for 1998 and 1999.  Petitioner testified that he kept the Victorville home for financial reasons and that he had to rent business property in Thousand Oaks because he could not commute every day between Victorville and Thousand Oaks.  We are unable to accept petitioner's testimony at face value.  See Tokarski v. Commissioner, supra at 74.  We find that petitioner's reason for relocating to Thousand Oaks, for renting a personal residence in Thousand Oaks, and for keeping the Victorville home was purely personal in nature.  Petitioner voluntarily relocated to Thousand Oaks to seek gainful employment.  Indeed, petitioner began working full time at a new job with Cardservice in Thousand Oaks and found a residence close to it.  Thus, we are not convinced that petitioner's desire to continue working as a part-time real estate agent established a business purpose for renting the

Thousand Oaks home.  Consequently, expenses such as rent, repairs and maintenance, utilities, and telephone associated with the Thousand Oaks home are disallowed under section 262.

In the alternative, petitioner contends that he is entitled to these expenses because he maintained a home office in the Thousand Oaks home.  Petitioner's contention lacks merit.

Although we do not doubt that petitioner may have worked at home on occasion with respect to his real estate activity, we decline to accept petitioner's naked assertion that the expenses are valid business expenses without further supporting evidence of the business purpose of the expenses or the correct allocation between personal and business expenses.  See Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. T.C. Memo. 1969-159.  On the basis of the record, we find that petitioner's principal place of business for his real estate activity was his office at Fred Sands and that petitioner maintained his home office for his own personal convenience.

In addition, petitioner failed to present any evidence whatsoever indicating the amount of time and the relative importance of the activities that he performed at Fred Sands in comparison to the Thousand Oaks home, and the extent to which he used his home office for business in the normal course of his real estate activity.  In particular, we fail to see how petitioner could have used the great room at Camino Cristobal

exclusively for business in light of the fact that the great room comprised of the living room and dining room, and for most of the year, petitioner's girlfriend lived with him.  With respect to the Moorpark home, petitioner did not present any testimony or documentary evidence of the extent to which he may have used the second bedroom as an office.  Thus, petitioner has not proven that the expenses associated with the Thousand Oaks home were deductible under sections 162 and 280A, rather than nondeductible personal, living, or family expenses.  See, e.g., Graves v. Commissioner, 88 T.C. 28, 38 (1987); Hynes v. Commissioner, 74 T.C. 1266, 1289 (1980).  Accordingly, we sustain respondent's determination on this issue.

III.  Conclusion

We have considered all of petitioner's arguments, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as the parties' concessions,

Decision will be entered under Rule 155.