William N. **ERNZEN**; Helen C. **Ernzen**; Fred **Gamauf**; Ruth O. **Gamauf**; Arthur R. **Fortier**; Loretta Fortier, Plaintiffs–Appellants,

v.

**UNITED STATES of America,** Defendant–Appellee.

No. 88–5741.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1988.

Decided May 16, 1989.

Richard T. Cubbage, San Diego, Cal., for plaintiffs-appellants.

David I. Pincus, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before REINHARDT and O'SCANNLAIN, Circuit Judges, and COYLE,* District Judge.

O'SCANNLAIN, Circuit Judge:

In this tax refund action, railroad retirees and their spouses appeal the district court's grant of summary judgment in favor of the United States. Appellants contend that income taxes imposed on the Tier II portion of their railroad retirement benefits violate equal protection.

## HISTORICAL PERSPECTIVE

In 1937, the federal old age insurance program was bifurcated into the social security and railroad retirement programs. Under this system, railroad workers paid more payroll tax and received greater retirement benefits than workers covered under the social security system. *Wallers v. United States*, 847 F.2d 1279, 1280–81 (7th Cir.1988).

Since 1974, benefits received by railroad retirees have been divided into two programs, identified as Tier I and Tier II benefits. Tier I benefits are essentially the equivalent of social security benefits. Tier I benefits are distributed in the same amount as social security benefits. Tier I benefits are also taxed at the same rate and in the same manner as social security benefits.[1]

A Tier II benefit "represents an amount in addition to what a Social Security recipient in similar circumstances would receive.

It is thus analogous to a private employer paid pension received by a person in another industry." H.R.Rep. No. 30, 98th Cong., 1st Sess., pt. I, at 18, *reprinted in* 1983 U.S.Code Cong. & Admin.News 729, 734. These additional benefits are taxed in the same manner as private pensions. Under 26 U.S.C. § 72(r)(1), Tier II benefits are treated for tax purposes as private pensions pursuant to 26 U.S.C. § 401(a). Section 401(a) pensions are treated as annuities pursuant to 26 U.S.C. § 402(a). *Wallers*, 847 F.2d at 1284 n. 13. Like social security, the railroad retirement system is funded in part through a mandatory payroll tax based upon a percentage of a railroad worker's gross wages. 26 U.S.C. § 3201. The rules on private annuities provide that employees are not taxed on the return of their contributions. 26 U.S.C. § 72.

Prior to 1983, all railroad retirement benefits were tax exempt. However, in 1983, to protect the railroad retirement system from imminent insolvency, Congress passed the Solvency Act of 1983 ("Solvency Act"), which imposed an income tax on railroad retirement benefits for the first time. At that time, the railroad retirement system was facing a severe fiscal crisis, caused primarily by the significant decline in the number of railroad workers contributing to the retirement system. For example, in August of 1981, there were 510,000 railroad workers contributing payroll-tax revenues. By January of 1983, this number had decreased to 388,000. Also, workers were increasingly electing early retirement, and, consequently, benefit outlays were increasing dramatically. H.R.Rep. No. 30, 98th Cong., 1st Sess., pt. I, at 24–26, *reprinted in* 1983 U.S.Code Cong. & Admin.News 729, 740–42. For similar fiscal reasons, Congress, in 1983, also imposed an income tax on social security benefits for the first time.

## FACTS AND PROCEEDINGS

Appellants are retired railroad employees and their spouses who receive retirement

---

* The Honorable Robert E. Coyle, United States District Judge for the Eastern District of California, sitting by designation.

1. Appellants do not challenge the validity of the taxes imposed on Tier I benefits.

benefits under the Railroad Retirement Act. They brought suit in district court seeking refunds in connection with taxes assessed against them in 1984 and 1985.[2] Specifically, appellants argue that provisions in the Solvency Act which authorize the taxing of railroad retirement benefits apply only to the portion of Tier II benefits attributable to *employer* contributions. Appellants also contend that low income railroad retirees are entitled to the same tax exemptions on Tier II benefits that low income social security recipients enjoy. According to appellants, denying railroad retirees these exemptions effectively denies them equal protection.

On cross-motions for summary judgment, the district court granted summary judgment in favor of the United States. It held that the taxing of Tier II benefits did not violate equal protection, reasoning that the Solvency Act was rationally related to the congressional purpose of ensuring the solvency of the railroad retirement system. The district court did not rule on the issue of whether only employer contributions to Tier II benefits are subject to taxation.

## DISCUSSION

### Equal Protection Claim

The appellants base their equal protection claim upon the differences in tax treatment between Tier II railroad retirement benefits and social security benefits. As noted above, Tier I benefits are taxed like social security benefits, and Tier II benefits are taxed like private pensions. *Wallers,* 847 F.2d at 1282.

A retiree is taxed on the lesser of (1) one-half of his Tier I or social security benefits, or (2) one-half of the amount by which his adjusted gross income exceeds $25,000 if he is single or $32,000 for married couples. Because workers fund these systems with after-tax income, only fifty percent of Tier I and social security benefits are includable in gross income. 26 U.S.C. § 86(a)–(d). *Wallers,* 847 F.2d at 1281 n. 3. In contrast, except for an em-

ployee's recoupment of his previous contributions, all Tier II benefits are taxed. Appellants contend that the Solvency Act discriminates against railroad retirees because no income tax exemption corresponding to that for social security benefits exists for Tier II benefits.

The Seventh Circuit has concluded that the taxing scheme does not discriminate against railroad retirees in comparison to social security retirees, *Wallers,* 847 F.2d at 1282, and appellants have advanced no argument which convinces us otherwise. However, even if this taxing scheme actually discriminates against railroad retirees, it does not necessarily follow that principles of equal protection have been violated. To prevail, appellants must overcome the presumption that the alleged statutory discrimination is constitutional. This is a heavy burden because a challenged classification which does not discriminate against suspect classes or burden fundamental rights is valid if rationally related to a legitimate governmental interest. *See Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Furthermore, when reviewing suspect legislation, it must be remembered that "[l]egislatures have especially broad latitude in creating classification and distinctions in tax statutes." *Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983).

The application of this "rational basis" test to the present case first requires an inquiry into the congressional purpose behind taxing Tier II benefits differently than social security benefits. If this purpose is legitimate and the classification rationally related to securing that purpose, the appellants' equal protection claim must fail. *Wallers,* 847 F.2d at 1282. Here, Congress clearly had a legitimate purpose when imposing the Tier II tax.

---

**2.** Plaintiffs Ernzen seek a refund of $1,257 for income taxes paid on railroad retirement benefits received in 1984. Plaintiffs Gamauf seek

$770 for taxes paid in 1984. Plaintiffs Fortier seek $933 for taxes paid in 1984.

In 1983, Congress determined it necessary to remedy the severe financial problems facing the railroad retirement system.[3] Consequently, the Solvency Act was passed "to ensure the solvency of the railroad retirement system and prevent large benefit cuts to one million retirees." H.R. Rep. No. 30, 98th Cong., 1st Sess., pt. I, at 14, *reprinted in* 1983 U.S.Code Cong. & Admin.News 729, 730. Thus, the purpose of the Solvency Act was legitimate because Congress acted with the intention to protect the railroad retirement system from insolvency. *See, e.g., United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 177, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980).

Once it is established that the congressional purpose behind the Solvency Act was legitimate, the issue becomes whether the Tier II tax was rationally related to preventing the railroad retirement system's insolvency. Clearly, this condition is satisfied. The Tier II tax generates hundreds of millions of dollars which directly benefits the system. *Wallers*, 847 F.2d at 1283. Given the financial crisis facing the system in 1983, these tax revenues undoubtedly helped prevent the railroad retirement system from becoming insolvent. Congress was justified in imposing the Tier II tax. *Wallers*, 847 F.2d at 1283.

We therefore hold that the tax on Tier II benefits does not violate the equal protection clause of the Constitution.[4]

AFFIRMED.

---

**3.** The appellants point out that some of the Tier II tax revenues will not directly benefit the railroad retirement system. This point does not detract from the fact that the primary purpose of the Solvency Act was to rescue the faltering railroad retirement system.

**4.** Appellants argue that not all of their Tier II benefits should be taxed, contending that Congress intended to tax only employer contributions. However, appellants' complaint expressly stated that "[t]he sole issue in this case is whether the new income tax [on railroad retirement benefits] ... is discriminatory." The district court did state that "Plaintiffs first argue that their railroad benefits should be taxed only on that portion of their Tier Two benefits which are made under employer contributions to the retirement fund." However, it is not clear whether the appellants were arguing a separate statutory interpretation claim or whether this was simply an element of their constitutional claim. Given that the statutory interpretation argument was not raised in appellants' complaint and that the district court did not purport to rule on any statutory interpretation argument, we consider appellants' argument to have been made as part of the constitutional question. Because the statutory interpretation argument is raised for the first time on appeal, we decline to address it. *See Wallers*, 847 F.2d at 1284.