# United States Tax Court

T.C. Memo. 2024-71

KENNETH STEVEN TUMA, SR., AND DEBORAH ANN TUMA,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 15535-18, 18978-19.                   Filed July 11, 2024.

————

Kenneth Steven Tuma, Sr., and Deborah Ann Tuma, pro sese.

*Rebekah A. Myers*, *Brenn C. Bouwhuis*, and *Inga C. Plucinski-Holbrook*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARSHALL, *Judge*:  In a notice of deficiency issued with respect to petitioners' 2015 tax year (2015 NOD), respondent determined that petitioners are liable for a federal income tax deficiency of $11,555 and a section 6662(a) accuracy-related penalty of $2,311.[1]  In a notice of deficiency issued with respect to petitioners' 2016 tax year (2016 NOD), respondent determined that petitioners are liable for a federal income tax deficiency of $12,741 and a section 6662(a) accuracy-related penalty of $2,548.  Respondent subsequently conceded the penalties, and the issue remaining for decision in these cases is whether the railroad retirement and Social Security benefits petitioners received from the

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, Rule references are to the Tax Court Rules of Practice and Procedure, and monetary amounts are rounded to the nearest dollar.

**[\*2]** U.S. Railroad Retirement Board (RRB) in 2015 and 2016 (years in issue) are taxable to the extent determined by respondent.

## FINDINGS OF FACT

These cases were tried during a standalone remote trial session of the Court.[2]  The following findings are based on the testimony and Exhibits admitted at trial.  The parties did not execute a joint stipulation of facts.

I.     *Mr. Tuma*

Mr. Tuma, a career railroad worker with at least 30 years of railroad service, was born in late-summer of 1953.  Before the years in issue, Mr. Tuma retired because of disability and began receiving monthly annuity benefits from the RRB.  During the years in issue, Mr. Tuma's benefits consisted of a Tier 1 benefit (which included both Social Security equivalent (SSE) and non-Social Security equivalent (NSSE) benefits), a Tier 2 benefit, and a supplemental annuity benefit.[3]  We describe the RRB's calculation and reporting of Mr. Tuma's benefits below.

A.     *2015*

The RRB issued Mr. Tuma a letter dated December 22, 2014, which provided the calculation of his monthly benefit for 2015 (2015 RRB benefit letter).  The calculation provided was as follows:

---

[2] Petitioner Deborah Ann Tuma did not appear at trial.  Petitioner Kenneth Steven Tuma, Sr., did appear at trial, but he did not have authority to represent Mrs. Tuma, and no other appearance was made on her behalf.  As such, the Court, on its own motion, will dismiss Mrs. Tuma from these cases for lack of prosecution.  *See* Rules 123, 149.  We will enter decisions with respect to Mrs. Tuma that are the same as the decisions that we will enter with respect to Mr. Tuma.

[3] Tier 1 of a railroad employee annuity is an amount similar to the Social Security benefit the employee would receive on the basis of combined railroad and Social Security earnings.  *See* 20 C.F.R. § 226.10 (2016).  Tier 2 of a railroad employee annuity is based only on the employee's railroad service.  *See* 20 C.F.R. § 226.11 (2016).  A supplemental annuity is an additional benefit with respect to railroad service.  *See* 20 C.F.R. §§ 216.41, 226.16 (2016).

| **[*3]** | Tier 1 | $2529.00 |
|---|---|---|
| | Tier 2 | $1509.97 |
| | Supplemental Annuity | $43.00 |
| | **Gross RRB Benefit** | **$4081.97** |
| | | |
| | (less Federal income taxes withheld) | $0.00 |
| | (less other deductions) | $0.00 |
| | | |
| | RRB Benefit (before Medicare) | $4081.97 |
| | Less Medicare premium(s) | $0.00 |
| | | |
| | **Benefit Amount** | **$4081.97** |

The RRB also issued Mr. Tuma a Form RRB–1099, Payments by the Railroad Retirement Board, for 2015. This form reported the SSE portion of the Tier 1 benefit (SSE Tier 1 benefit) paid to Mr. Tuma for the year, listing the amount as $5,625.

In addition, the RRB issued Mr. Tuma a Form RRB–1099–R, Annuities or Pensions by the Railroad Retirement Board, for 2015. This form reported Mr. Tuma's contributory amount paid for the year, which consisted of the NSSE portion of his Tier 1 benefit (NSSE Tier 1 benefit) together with his Tier 2 benefit, as well as his supplemental annuity benefit paid. These amounts were listed as $42,843 and $516, respectively, for a total reported amount paid of $43,359. Mr. Tuma's 2015 Form RRB–1099–R also reported an employee contribution of $51,393.

B. *2016*

For the calculation of his monthly benefit for 2016, the RRB issued Mr. Tuma a letter dated December 22, 2015 (2016 RRB benefit letter). This letter provided the same benefit calculation as did the 2015 RRB benefit letter, with monthly Tier 1, Tier 2, and supplemental annuity benefits of $2,529, $1,509.97, and $43, respectively, and a total monthly benefit of $4,081.97. As it had for 2015, the RRB also issued Mr. Tuma Forms RRB–1099 and RRB–1099–R for 2016.

With respect to his SSE Tier 1 benefit, Mr. Tuma's 2016 Form RRB–1099 reported the amount paid as $22,500, a larger amount than for the prior year. As to his NSSE Tier 1 and Tier 2 benefits, Mr. Tuma's 2016 Form RRB–1099–R reported a correspondingly smaller contributory amount paid of $25,968. And as to his supplemental

[*4] annuity benefit, Mr. Tuma's 2016 Form RRB–1099–R reported the same $516 amount, for a total reported amount paid of $26,484. Mr. Tuma's 2016 Form RRB–1099–R also reported the same employee contribution amount of $51,393.

II.  *Mrs. Tuma*

Mrs. Tuma is a retiree. She received monthly annuity benefits from the RRB during 2015 and 2016 as Mr. Tuma's spouse. These benefits consisted of Social Security and Tier 2 benefits paid by the RRB.[4] In addition to these benefits, Mrs. Tuma received private pension benefits during the years in issue. We describe below the calculation and reporting of Mrs. Tuma's benefits paid by the RRB as well as the reporting of her private pension benefits.

A.  *2015*

The RRB calculated Mrs. Tuma's monthly benefit in the same manner for both 2015 and 2016. The RRB issued Mrs. Tuma a letter dated December 22, 2015 (Mrs. Tuma's RRB benefit letter), which set forth this calculation as follows:

| | |
|---|---|
| Tier 2 | $679.48 |
| **Gross RRB Benefit** | **$679.48** |
| | |
| (less Federal income taxes withheld) | $130.00 |
| (less other deductions) | $62.00 |
| | |
| RRB Benefit (before Medicare) | $487.48 |
| SS Benefit Paid by RRB (before Medicare)[5] | $2059.00 |
| Less Medicare Premium(s) | $104.90 |
| | |
| **Benefit Amount** | **$2441.58** |

---

[4] If a spouse is entitled to receive Social Security benefits and the railroad employee has been credited with at least 120 months of service, the spouse's Social Security benefits are paid by the RRB. *See* 20 C.F.R. § 235.3 (2016). A spouse Tier 2 benefit is computed as 45% of the railroad employee's Tier 2 benefit. *See* 20 C.F.R. § 226.32 (2016).

[5] We note that the Social Security Administration (SSA) is responsible for the determination of the amount of Social Security benefits to be paid by the RRB. *See* 20 C.F.R. § 235.4 (2016).

[*5] The RRB also issued Mrs. Tuma a Form RRB–1099–R for 2015. Mrs. Tuma's 2015 Form RRB–1099–R reported the contributory amount of her benefit, which consisted of the Tier 2 benefit she received, as $8,154. The form also reported repayments of $429 and federal income tax withheld of $2,660.

With respect to the Social Security benefits the RRB paid for 2015, the SSA issued Mrs. Tuma a Form SSA–1099, Social Security Benefit Statement. Mrs. Tuma's 2015 Form SSA–1099 reported the Social Security benefit amount paid as $24,708. The Internal Revenue Service (IRS) Wage and Income Transcript for Mrs. Tuma's 2015 tax year identifies this amount as attributable to disability.

Mrs. Tuma was also issued a Form 1099–R, Distributions From Pensions, Annuities, Retirement or Profit Sharing Plans, IRAs, Insurance Contracts, etc., with respect to a private pension paid to her during 2015 by AXA Equitable. The 2015 Form 1099–R reported a gross distribution to Mrs. Tuma of $16,993 and characterized the entire amount as taxable.

B. *2016*

Calculated the same as for 2015, Mrs. Tuma's 2016 monthly RRB benefit was likewise based on a Tier 2 benefit of $679.48, a Social Security benefit of $2,059, and certain deductions and withholdings. Also as with the prior year, the RRB issued Mrs. Tuma a Form RRB–1099–R with respect to the Tier 2 benefits it paid for 2016. And, the SSA issued her a Form SSA–1099 with respect to the Social Security benefits that the RRB paid for the year.

Mrs. Tuma's 2016 Form RRB–1099–R reported the same total contributory, or Tier 2, amount paid of $8,154, along with slightly increased repayments and federal income tax withholding of $744 and $1,560, respectively. Mrs. Tuma's 2016 Form SSA–1099 reported the same Social Security benefit amount paid of $24,708. The IRS Wage and Income Transcript for Mrs. Tuma's 2016 tax year also identified the Social Security benefit as attributable to disability.

In addition, Mrs. Tuma was issued a Form 1099–R with respect to a private pension paid to her by AXA Equitable during 2016. Again as with 2015, Mrs. Tuma's 2016 Form 1099–R reported a gross distribution of $16,993 and characterized the entire amount as taxable.

[*6] III.  *Petitioners' Income Tax Reporting*

Petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for each year in issue.  Mr. Tuma prepared the returns using the TurboTax computer program.

A.  *2015*

On their 2015 Form 1040, petitioners reported a taxable pension distribution of $16,993, the amount of Mrs. Tuma's private pension distribution.  They also reported total Social Security benefits of $30,333, the combined amount of Mr. Tuma's SSE Tier 1 benefit and Mrs. Tuma's Social Security benefit, and taxable Social Security benefits of $80.  Petitioners did not report any of Mr. Tuma's NSSE Tier 1, Tier 2, and supplemental annuity benefits.  Neither did they report Mrs. Tuma's Tier 2 benefit.

B.  *2016*

On their 2016 Form 1040, petitioners reported a taxable pension distribution of $16,993, again the amount of Mrs. Tuma's private pension distribution.  Petitioners also reported total Social Security benefits of $24,708, the amount of Mrs. Tuma's Social Security benefits, and taxable Social Security benefits of zero.  Consistent with their 2015 Form 1040, petitioners did not report on their 2016 return any of Mr. Tuma's NSSE Tier 1, Tier 2, and supplemental annuity benefits, or Mrs. Tuma's Tier 2 benefit.  For this year, however, they also did not report Mr. Tuma's SSE Tier 1 benefit, such that the Social Security benefits they did report for 2016 reflected only Mrs. Tuma's benefits.

IV.  *The Notices of Deficiency*

Respondent issued petitioners notices of deficiency for the years in issue.  The 2015 NOD was dated May 14, 2018, and the 2016 NOD was dated July 22, 2019.  In the notices, respondent determined that petitioners are liable for federal income tax deficiencies of $11,555 and $12,741 for 2015 and 2016, respectively.  These determinations were based on adjustments respondent made to petitioners' income with

[*7] respect to the railroad retirement and Social Security benefits paid by the RRB.[6]

A. *2015*

In the 2015 NOD, respondent increased petitioners' gross income from their SSE Tier 1 and Social Security benefits by $25,703. Respondent also increased petitioners' gross income from their NSSE Tier 1, Tier 2, and supplemental annuity benefits by $51,511, for a total increase in gross income of $77,214. With respect to these increases, the 2015 NOD explained that the IRS had received RRB and SSA information returns reporting information different from what petitioners had reported.

More specifically, as to petitioners' SSE Tier 1 and Social Security benefits, the 2015 NOD stated that the IRS received "Form[s] 1099–SSA" from the RRB and the SSA reporting distributions of $5,625 and $24,708, respectively, for a total of $30,333. And as to petitioners' NSSE Tier 1, Tier 2, and supplemental annuity benefits, the 2015 NOD explained that the IRS received "Form[s] 1099–R" from the RRB reporting total distributions of $51,511 as follows: $24,723 with distribution code "X" (DC X); $18,119 with distribution code "Y" (DC Y); $8,153 also with DC Y; and, $516 with distribution code "Z" (DC Z). The notice used DC X to reflect the NSSE Tier 1 benefit, DC Y to reflect the Tier 2 benefit, and DC Z to reflect the supplemental annuity benefit.

The 2015 NOD treated the entire $51,511 of petitioners' NSSE Tier 1, Tier 2, and supplemental annuity benefits reported by the RRB as taxable. In connection with this increase to petitioners' gross income, the 2015 NOD also treated $25,783 of the SSE Tier 1 and Social Security benefits reported by the RRB and the SSA as taxable.

B. *2016*

In the 2016 NOD, respondent increased petitioners' gross income from their SSE Tier 1 and Social Security benefits by $32,548. Respondent also increased their gross income from their NSSE Tier 1, Tier 2, and supplemental annuity benefits by $34,636, for a total

---

[6] In connection with the adjustments to petitioners' income, respondent also made certain computational adjustments to medical deductions and premium tax credits that petitioners claimed on their returns for the years in issue. These computational adjustments will be resolved in the Rule 155 computations that the Court will direct in accordance with this Opinion.

[*8] increase of $67,184. As with the increases for 2015, the 2016 NOD explained that the IRS had received RRB and SSA information returns reporting information different from what petitioners had reported.

As to petitioners' SSE Tier 1 and Social Security benefits, the 2016 NOD specified that the IRS received "Form[s] 1099–SSA" from the RRB and the SSA reporting distributions of $22,500 and $24,708, respectively, for a total of $47,208. Using the same distribution codes as the 2015 NOD, the 2016 NOD also explained that the IRS received "Form[s] 1099–R" from the RRB reporting $34,636 of NSSE Tier 1, Tier 2, and supplemental annuity benefit distributions as follows: $7,848 with DC X; $18,119 with DC Y; $8,153 also with DC Y; and $516 with DC Z.

Also as with the 2015 NOD, the 2016 NOD treated the entire amount of petitioners' NSSE Tier 1, Tier 2, and supplemental annuity benefits reported by the RRB, here $34,636, as taxable. And, in connection with this increase to their gross income, the 2016 NOD also treated $32,548 of petitioners' SSE Tier 1 and Social Security benefits reported by the RRB and the SSA as taxable.

V.    *Procedural Matters*

On August 9, 2018, petitioners timely petitioned the Court with respect to the 2015 NOD, and the case was assigned Docket No. 15535-18. *See* § 6213(a). On October 21, 2019, petitioners timely petitioned the Court with respect to the 2016 NOD, and that case was assigned Docket No. 18978-19. *See* §§ 6213(a), 7503. In each Petition, petitioners identified Idaho as their state of residence. On December 13, 2019, petitioners moved that their cases be consolidated. On January 8, 2020, the Court granted petitioners' Motion and consolidated the cases for trial, briefing, and opinion.

OPINION

I.    *Jurisdiction*

We are a Court of limited jurisdiction. It is well established that we may exercise our jurisdiction only to the extent authorized by Congress. *See* § 7442; *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). In a deficiency case, our jurisdiction is predicated on a valid notice of deficiency and a timely filed petition. *See* §§ 6212–6214; *Dees v. Commissioner*, 148 T.C. 1, 3–4 (2017); *see also Sanders v. Commissioner*,

**[*9]** No. 15143-22, 161 T.C. (Nov. 2, 2023); *Hallmark Rsch. Collective v. Commissioner*, 159 T.C. 126 (2022).

There is no doubt that we have notices of deficiency and timely filed Petitions in these cases. Mr. Tuma contends, however, that the notices of deficiency contain such "egregious errors" as to render them invalid and deprive the Court of jurisdiction. Relying on *Scar v. Commissioner*, 814 F.2d 1363, 1370 (9th Cir. 1987), *rev'g* 81 T.C. 855 (1983), and *Dees*, respondent counters that the notices of deficiency provide determinations for particular years and amounts based on information related to petitioners and are therefore valid. Because the question of the Court's jurisdiction is fundamental, we consider Mr. Tuma's challenge to our jurisdiction before proceeding to the merits of the cases. *See Naftel*, 85 T.C. at 530.

Section 6212(a) provides that, if the Commissioner "determines that there is a deficiency in respect of any tax imposed . . . he is authorized to send notice of such deficiency to the taxpayer." In *Scar*, the U.S. Court of Appeals for the Ninth Circuit, the court to which appeal in these cases would presumably lie, *see* § 7482(b)(1)(A), concluded that, to make such a determination with respect to a particular taxpayer, "the Commissioner must consider information that relates to [that] taxpayer," *Scar v. Commissioner*, 814 F.2d at 1368. And in *Dees*, 148 T.C. at 6, we explained that to determine whether a notice of deficiency is valid, "we look to see whether the notice objectively put a reasonable taxpayer on notice that the Commissioner determined a deficiency in tax for a particular year and amount," and that "if the notice is sufficient to inform a reasonable taxpayer that the Commissioner has determined a deficiency, our inquiry ends there; the notice is valid."

In the 2015 NOD, respondent determined that petitioners are liable for a federal income tax deficiency of $11,555 for the 2015 tax year on the basis of information returns issued with respect to petitioners by the RRB and the SSA. In the 2016 NOD, respondent determined that petitioners are liable for a federal income tax deficiency of $12,741 for their 2016 tax year also on the basis of information returns issued with respect to petitioners by the RRB and the SSA. We thus inquire no

**[*10]** further in this regard.[7] We agree with respondent that the notices of deficiency are valid, and we have jurisdiction over these cases.

II.  *Railroad Retirement and Social Security Benefits, In General*

Under the Railroad Retirement Act of 1974, Pub. L. No. 93-445, 88 Stat. 1305 (codified as amended at 45 U.S.C. §§ 231–231v), a railroad employee and his spouse may be entitled to receive certain types of annuity benefits from the RRB, including Tier 1, Tier 2, and supplemental annuity benefits as described above.  Absent disability, no benefits are paid to the employee by the RRB until he reaches age 62, reaches age 60 and completes 30 years of service, or reaches Social Security retirement age as defined by 42 U.S.C. § 416(*l*) (2012). 45 U.S.C. § 231a(a) (2012).  The railroad employee's spouse may receive an annuity from the RRB based on age but not on disability.  45 U.S.C. § 231a(c); 20 C.F.R. § 216.50 (2016).  A railroad employee and his spouse may also be entitled to have their Social Security benefits paid by the RRB.  20 C.F.R. §§ 235.1–235.4 (2016).  If the SSA determines that the employee or his spouse is entitled to Social Security benefits and the employee has been credited with at least 120 months of service, the SSA certifies such benefits to the RRB for payment by the RRB.  20 C.F.R. § 235.4.

Section 61(a) provides that gross income means all income from whatever source derived, including pensions and annuities, unless such income has been specifically excepted from inclusion by the Code.  *See* § 61(a)(9), (11); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955).  At one time, railroad retirement and Social Security benefits were generally tax exempt.  *See Ernzen v. United States*, 875 F.2d 228, 229 (9th Cir. 1989); *Reimels v. Commissioner*, 123 T.C. 245, 247 (2004), *aff'd*, 436 F.3d 344 (2d Cir. 2006).  Because of fiscal necessities, however, Congress has imposed income tax on these benefits for the last 40 years. *Ernzen*, 875 F.2d at 229; *Reimels*, 123 T.C. at 247; *see also* Railroad Retirement Solvency Act of 1983, Pub. L. No. 98-76, 97 Stat. 411; Social Security Amendments of 1983, Pub. L. No. 98-21, 97 Stat. 65.  The applicable tax treatment depends upon the type of benefit.

Social Security benefits are taxed under section 86.  Section 86 requires the inclusion in gross income of up to 85% of the Social Security benefits received, including Social Security disability benefits.  *Reimels*,

[7] See *infra* Part V for a more detailed discussion of the relationship between the 2015 and the 2016 NODs and the information returns issued to petitioners.

**[\*11]** 123 T.C. at 247–48; *Brady v. Commissioner*, T.C. Memo. 2013-1, at \*4–5. The includible amount is based on the taxpayer's gross income, as determined without regard to section 86 and modified by certain adjustments not relevant here. *See* § 86(a) and (b). SSE Tier 1 benefits are taxed at the same rate and in the same manner as Social Security benefits. *See* § 86(d)(1)(B), (4); *Ernzen*, 875 F.2d at 229; *Bradley v. Commissioner*, T.C. Memo. 1991-578, 62 T.C.M. (CCH) 1311, 1311.

In contrast, NSSE Tier 1 and Tier 2 benefits are taxed under section 72 in the same manner as section 401(a) qualified plan distributions. *See* § 72(r)(1); *Ernzen*, 875 F.2d at 229; *Bradley*, 62 T.C.M. (CCH) at 1311. Like private pension benefits, these benefits are thus generally taxed as annuities and included in gross income except to the extent of the taxpayer's own contributions, which may be recovered ratably. *See* § 72(a)(1), (d), (r)(1) and (2); *Ernzen*, 875 F.2d at 229; *Bradley*, 62 T.C.M. (CCH) at 1311. Supplemental annuity benefits are also taxed under section 72. *See* § 72(r)(1), (3). Employee contributions cannot be allocated to these benefits, however, such that they are fully taxable. *See* § 72(r)(2)(C).

III. *Burden of Proof*

In general, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In cases of unreported income, however, the Commissioner must establish an evidentiary foundation connecting the taxpayer with the income-producing activity or otherwise demonstrate that the taxpayer actually received income for the presumption to attach. *See Walquist v. Commissioner*, 152 T.C. 61, 67 (2019); *see also Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982); *Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977). Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Walquist*, 152 T.C. at 67–68.

Respondent introduced into evidence the RRB benefit letters issued to petitioners. Respondent also introduced into evidence the information returns issued to petitioners by the RRB and the SSA. Mr. Tuma admits that he is a retired railroad worker and that petitioners received railroad retirement and Social Security benefits from the RRB

[*12] during both of the years in issue. Mr. Tuma raises no dispute with the calculation of their benefits in the RRB benefit letters and concedes that the amounts reported in the information returns are correct. *Cf.* § 6201(d). Accordingly, the burden is on petitioners to prove that respondent's determinations are arbitrary or erroneous.[8]

IV. *Mr. Tuma's Arguments*

Throughout the litigation of these cases, Mr. Tuma has asserted as his "primary" argument that respondent incorrectly determined the adjustments to petitioners' income on the basis of benefit amounts that were not reported in the information returns issued by the RRB and the SSA. Mr. Tuma has also consistently asserted that respondent improperly failed to account for Mr. Tuma's employee contributions in his determinations with respect to Mr. Tuma's NSSE Tier 1 and Tier 2 benefits. At trial, Mr. Tuma further seemed to assert that at least some portion of the benefits paid by the RRB should be treated as nontaxable due to his and Mrs. Tuma's being disabled. In his posttrial brief, however, Mr. Tuma's disability argument appeared to take instead the form of a request for a section 22 disability credit with respect to Mrs. Tuma.[9]

We address each of these arguments in turn.

V. *Petitioners' Benefit Amounts*

We first consider Mr. Tuma's primary argument—that respondent incorrectly adjusted petitioners' income on the basis of benefit amounts that were not reported in the information returns

---

[8] Petitioners contend that the burden of proof should shift to respondent under section 7491(a). Petitioners, however, have failed to demonstrate that they meet the requirements for such a shift, and the burden of proof remains with them. *See* § 7491(a)(1) and (2); *see also Rolfs v. Commissioner*, 135 T.C. 471, 483 (2010) ("A taxpayer bears the burden of proving that he or she has met the requirements of section 7491(a)."), *aff'd*, 668 F.3d 888 (7th Cir. 2012).

[9] Also in his posttrial brief, Mr. Tuma asserted for the first time that the IRS issued the 2016 NOD after the period of limitations for assessment had passed for their 2016 return. *See* § 6501. Parties must set forth the defense of the statute of limitations in their pleadings. Rule 39. As petitioners failed to properly plead this issue, we do not consider it other than to note that, even if it had been pleaded properly, petitioners also failed to provide any evidence as to when they filed their 2016 return. *See Sundstrand Corp. & Subs. v. Commissioner*, 96 T.C. 226, 349 (1991); *see also Soni v. Commissioner*, T.C. Memo. 2021-137, at *21 ("To establish this defense, taxpayers must make a prima facie case showing the date they filed their return, the expiration date of the period of limitations based on that filing date, and receipt or mailing of the SNOD after the running of that period."), *aff'd*, 76 F.4th 49 (2d Cir. 2023).

**[\*13]** issued by the RRB and the SSA. With respect to this argument, respondent contends that the notices properly separated the amounts into petitioners' Social Security, SSE Tier 1, NSSE Tier 1, Tier 2, and supplemental annuity benefits, and that when added together, "they clearly equal the amounts in the 1099s that petitioners agree are accurate."[10] As we explain, we conclude that the benefit amounts on which the determinations in the notices of deficiency are based are consistent with the RRB and the SSA information returns issued to petitioners.

A. *2015*

In the 2015 NOD, respondent increased petitioners' gross income by $77,214. Of this amount, $25,703 was with respect to petitioners' SSE Tier 1 and Social Security benefits. The remaining $51,511 was with respect to petitioners' NSSE Tier 1, Tier 2, and supplemental annuity benefits.

1. *Petitioners' SSE Tier 1 and Social Security Benefits*

As to petitioners' SSE Tier 1 and Social Security benefits, the 2015 NOD specified that the IRS received "Form[s] 1099–SSA" from the RRB and the SSA reporting distributions of $5,625 and $24,708, respectively, for a total of $30,333. The 2015 NOD included $25,783 of this amount, or 85%, in petitioners' gross income. This is the amount that results under section 86 by virtue of including in petitioners' gross income the $51,511 of NSSE Tier 1, Tier 2, and supplemental annuity benefits as determined in the 2015 NOD, along with Mrs. Tuma's $16,993 private pension distribution as petitioners reported. *See* § 86(a)–(c).

a. *Mr. Tuma's SSE Tier 1 Benefit*

Although the 2015 NOD does refer to a "Form 1099–SSA," a form which Mr. Tuma did not receive, it is clear that this reference is intended with respect to Mr. Tuma's 2015 Form RRB–1099, which reported $5,625 as his SSE Tier 1 benefit amount. This amount of SSE Tier 1 benefit is also consistent with both Mr. Tuma's 2015 RRB benefit letter and his 2015 Form RRB–1099–R. Mr. Tuma's 2015 RRB benefit letter

---

[10] Respondent concedes, however, that Mrs. Tuma's Tier 2 benefit amounts reported on her 2015 and 2016 Forms RRB–1099–R should have been adjusted, before tax was applied, by the corresponding repayments and federal income tax withheld for each of the years in issue.

**[\*14]** provided for monthly Tier 1 and Tier 2 benefits of $2,529 and $1,510, respectively, which when multiplied by 12 months, equal $30,348 and $18,120, respectively. The total calculated Tier 1 amount, $30,348, less the SSE Tier 1 amount reported on Mr. Tuma's 2015 Form RRB–1099, $5,625, equals $24,723. This $24,723 amount plus the Tier 2 benefit amount calculated for the year, $18,120, equals $42,843, which is the contributory amount, or combined NSSE Tier 1 and Tier 2 benefit amount, reported on Mr. Tuma's 2015 Form RRB–1099–R.

b.  *Mrs. Tuma's Social Security Benefit*

The "Form 1099–SSA" to which the 2015 NOD refers as reporting a distribution of $24,708 is clearly in reference to Mrs. Tuma's 2015 Form SSA–1099, which reported a Social Security benefit of that amount. The $24,708 amount is also consistent with Mrs. Tuma's RRB benefit letter. The letter provided for a monthly Social Security benefit paid by the RRB of $2,059, which multiplied by 12 months equals $24,708.

2.  *Petitioners' NSSE Tier 1, Tier 2, and Supplemental Annuity Benefits*

As to petitioners' NSSE Tier 1, Tier 2, and supplemental annuity benefits, the 2015 NOD explained that the IRS received "Form[s] 1099–R" from the RRB reporting $51,511 of taxable distributions as follows: $24,723 with DC X; $18,119 with DC Y; $8,153 also with DC Y; and $516 with DC Z. The 2015 NOD used DC X to reflect petitioners' NSSE Tier 1 benefit, DC Y their Tier 2 benefit, and DC Z their supplemental annuity benefit. Mr. Tuma contends that these distribution codes provide particularly compelling evidence that the 2015 NOD is incorrect, as they do not appear on the information returns issued by the RRB. We disagree that respondent's use of these codes compels such a conclusion.

a.  *Mr. Tuma's NSSE Tier 1 and Tier 2 Benefits*

The 2015 NOD refers to "Form[s] 1099–R" reporting distributions of $24,723 and $18,119 with DC X and DC Y, respectively. We discern this to refer to Mr. Tuma's 2015 Form RRB–1099–R, which reported Mr. Tuma's contributory amount, or NSSE Tier 1 and Tier 2 benefits, as $42,843—the sum of $24,723 and $18,119. We further discern these individual amounts to be consistent with Mr. Tuma's 2015 RRB benefit letter and 2015 Form RRB–1099. As discussed, Mr. Tuma's 2015 RRB benefit letter provided for monthly Tier 1 and Tier 2 benefits of $2,529 and $1,510, respectively, which when multiplied by 12 months, equal

[*15] $30,348 and $18,120, respectively. The total calculated Tier 1 amount, $30,348, less the SSE Tier 1 amount reported on Mr. Tuma's 2015 Form RRB–1099, $5,625, equals $24,723, the amount included in the 2015 NOD under DC X. And, the total calculated Tier 2 amount is equal to the $18,119 amount included in the 2015 NOD under DC Y.

### b. *Mrs. Tuma's Tier 2 Benefit*

The 2015 NOD also refers to a "Form 1099–R" reporting a distribution of $8,153 with DC Y. This clearly refers to Mrs. Tuma's 2015 Form RRB–1099–R, which reported her contributory, or Tier 2, benefit as $8,154. This amount is also consistent with her RRB benefit letter, which provided for a monthly Tier 2 benefit of $679.48, as that amount multiplied by 12 months equals $8,153.76.

### c. *Mr. Tuma's Supplemental Annuity Benefit*

The 2015 NOD additionally refers to a "Form 1099–R" reporting a distribution of $516 with DC Z. This is equally clear in its reference to Mr. Tuma's 2015 Form RRB–1099–R, which reported a supplemental annuity benefit paid of $516. This amount is also consistent with Mr. Tuma's 2015 RRB benefit letter, which provided for a monthly supplemental annuity benefit of $43, as this amount multiplied by 12 months equals $516.

### B. *2016*

In the 2016 NOD, respondent increased petitioners' gross income by $67,184. Of this amount, $32,548 was with respect to petitioners' SSE Tier 1 and Social Security benefits. The remaining $34,636 was with respect to their NSSE Tier 1, Tier 2, and supplemental annuity benefits.

### 1. *Petitioners' SSE Tier 1 and Social Security Benefits*

As to petitioners' SSE Tier 1 and Social Security benefits, the 2016 NOD specified that the IRS received "Form[s] 1099–SSA" from the RRB and the SSA reporting distributions of $22,500 and $24,708, respectively, for a total of $47,208. The 2016 NOD included $32,548 of this amount, or 69%, in petitioners' gross income. This is the amount that results under section 86 by virtue of including in petitioners' gross income the $34,636 of NSSE Tier 1, Tier 2, and supplemental annuity benefits as determined in the 2016 NOD, along with Mrs. Tuma's

[*16] $16,993 private pension distribution as reported by petitioners. *See* § 86(a)–(c).

### a.    *Mr. Tuma's SSE Tier 1 Benefit*

Like the 2015 NOD, the 2016 NOD refers to a "Form 1099–SSA," a form which, as Mr. Tuma points out, he did not receive. Also as with the 2015 NOD, however, it is clear that this reference is intended with respect to Mr. Tuma's 2016 Form RRB–1099, which reported $22,500 as his SSE Tier 1 benefit. This amount of SSE Tier 1 benefit is also consistent with both Mr. Tuma's 2016 RRB benefit letter and his 2016 Form RRB–1099–R. Mr. Tuma's 2016 RRB benefit letter provided for the same monthly Tier 1 and Tier 2 benefits of $2,529 and $1,509.97, respectively, as his 2015 RRB benefit letter, which when multiplied by 12 months, equal $30,348 and $18,120, respectively. The total calculated Tier 1 amount, $30,348, less the SSE Tier 1 amount reported on Mr. Tuma's 2016 Form RRB–1099, $22,500, equals $7,848. This $7,848 amount plus the Tier 2 benefit amount calculated for the year, $18,120, equals $25,968, which is the contributory amount, or combined NSSE Tier 1 and Tier 2 benefit amounts, reported on Mr. Tuma's 2016 Form RRB–1099–R.

### b.    *Mrs. Tuma's Social Security Benefit*

The "Form 1099–SSA" to which the 2016 NOD refers as reporting a distribution of $24,708 clearly refers to Mrs. Tuma's 2016 Form SSA–1099, which reported a Social Security benefit of that amount. The $24,708 amount is again consistent with Mrs. Tuma's RRB benefit letter. As we have discussed, the letter provided for a monthly Social Security benefit paid by the RRB of $2,059, which when multiplied by 12 months equals $24,708.

### 2.    *Petitioners' NSSE Tier 1, Tier 2, and Supplemental Annuity Benefits*

As to petitioners' NSSE Tier 1, Tier 2, and supplemental annuity benefits, the 2016 NOD explained that the IRS received "Form[s] 1099–R" from the RRB reporting $34,636 of taxable distributions as follows: $7,848 with DC X; $18,119 with DC Y; $8,153 also with DC Y; and $516 with DC Z. Like the 2015 NOD, the 2016 NOD used DC X to reflect petitioners' NSSE Tier 1 benefit, DC Y their Tier 2 benefit, and DC Z their supplemental annuity benefit. Also as with the 2015 NOD, Mr. Tuma contends that these distribution codes demonstrate that the notice is incorrect. Again, we disagree.

**[*17]**                    a.          *Mr. Tuma's NSSE Tier 1 and Tier 2 Benefits*

The 2016 NOD refers to "Form[s] 1099–R" reporting distributions of $7,848 and $18,119 with DC X and DC Y, respectively.  We discern this to refer to Mr. Tuma's 2016 Form RRB–1099–R, which reported Mr. Tuma's contributory amount, or NSSE Tier 1 and Tier 2 benefits, as $25,968—the sum of $7,848 and $18,119.  We further discern these individual amounts to be consistent with Mr. Tuma's 2016 RRB benefit letter and 2016 Form RRB–1099.  As we have discussed, Mr. Tuma's 2016 RRB benefit letter provided for monthly Tier 1 and Tier 2 benefits of $2,529 and $1,510, respectively, which when multiplied by 12 months, equal $30,348 and $18,120, respectively.  The total calculated Tier 1 amount, $30,348, less the SSE Tier 1 amount reported on Mr. Tuma's 2016 Form RRB–1099, $22,500, equals $7,848, i.e., the amount included in the 2016 NOD under DC X.  And, the total calculated Tier 2 amount is equal to the $18,119 included in the 2016 NOD under DC Y.

b.          *Mrs. Tuma's Tier 2 Benefit*

As with the 2015 NOD, the 2016 NOD also refers to a "Form 1099–R" reporting a distribution of $8,153 with DC Y.  This clearly refers to Mrs. Tuma's 2016 Form RRB–1099–R, which reported her contributory, or Tier 2, benefit amount as $8,154.  As it was for 2015, this amount is also consistent with her RRB benefit letter.

c.          *Mr. Tuma's Supplemental Annuity Benefit*

Also as with the 2015 NOD, the 2016 NOD refers to a "Form 1099–R" reporting a distribution of $516 with DC Z.  This is equally clear in its reference to Mr. Tuma's 2016 Form RRB–1099–R, which reported a supplemental annuity benefit of $516.  This amount is also consistent with Mr. Tuma's 2016 RRB benefit letter, which provided for a monthly supplemental annuity benefit amount of $43, which multiplied by 12 months equals $516.

VI.     *Mr. Tuma's Employee Contributions*

Having concluded that the benefit amounts on which the determinations in the notices of deficiency are based are consistent with the RRB and the SSA information returns issued to petitioners, as well as their RRB benefit letters, we turn next to Mr. Tuma's argument that respondent's determinations with respect to his NSSE Tier 1 and Tier 2 benefits improperly failed to account for his employee contributions.

**[\*18]**  With respect to this argument, respondent conceded at trial that an employee contribution amount of $51,393 was reported on Mr. Tuma's 2015 and 2016 Forms RRB–1099–R.  He also conceded that this amount "is recovered ratably over the period of time that Mr. Tuma receives the benefit.  And so that'll be a computation that is done once we determine what is or isn't gross income.  And that recovery will be computed."  On posttrial brief, however, respondent asserted that, although Mr. Tuma would "ordinarily be permitted to exclude a portion of" the contributory amounts shown on his Forms RRB–1099–R from his gross income, Mr. Tuma failed to provide information with respect to his annuity starting date and his age on that date needed to compute the proper recovery.  And on this ground, respondent further asserted that Mr. Tuma should therefore be allowed no offset for contributions or, "[a]ssuming the Court is inclined to provide some offset," an offset that assumes the facts most favorable to respondent.

Mr. Tuma generally testified that that he was entitled to receive benefits from the RRB as early as 2009 but that he did not receive any payments until sometime in 2010.  Mr. Tuma did not testify to any specific dates, however, or introduce any documentary evidence to support the testimony that he did provide.  We therefore agree with respondent that the record is lacking in regard to Mr. Tuma's annuity starting date and his age on that date.  Given, however, that respondent conceded at trial that Mr. Tuma made employee contributions and is entitled to a ratable recovery of those contributions over the period he receives his NSSE Tier 1 and Tier 2 benefits, we are also inclined to allow Mr. Tuma an offset for the contributions.

Section 72(d) generally provides that gross income does not include so much of a monthly annuity payment under a qualified plan as does not exceed the amount obtained by dividing (I) the annuitant's investment in the contract as of the annuity starting date by (II) the number of anticipated payments as determined according to the age of the annuitant on that date.  *See* § 72(d)(1)(A) and (B).  As relevant here, it further provides that, if the annuity is payable over the life of a single individual, the number of anticipated payments is determined as follows:

**[*19]**

| If the age of the annuitant on the annuity starting date is: | The number of anticipated payments is: |
|---|---|
| Not more than 55 | 360 |
| More than 55 but not more than 60 | 310 |
| More than 60 but not more than 65 | 260 |
| More than 65 but not more than 70 | 210 |
| More than 70 | 160 |

§ 72(d)(1)(B)(iii). To determine a taxpayer's rate of recovery, his investment in the contract, annuity starting date, and age as of that date, are thus required.

In these cases, the parties have agreed that Mr. Tuma's investment is his $51,393 of employee contributions. As to Mr. Tuma's annuity starting date and age as of that date, respondent invites us to conclude that Mr. Tuma was age 55 when he began receiving his benefits such that Mr. Tuma would have a longer recovery period based on 360 anticipated payments. Mr. Tuma makes no argument in this regard, contending only that respondent should have accounted for his contributions. In light of Mr. Tuma's general testimony that he was entitled to receive benefits with respect to 2009, when he would have been age 55 for most of the year, and his failure to provide any specific evidence as to his annuity starting date, we accept respondent's invitation and conclude that Mr. Tuma was age 55 on his annuity starting date. As such, we hold that Mr. Tuma's employee contributions shall be recovered on the basis of 360 anticipated payments in the Rule 155 computations that the Court will direct.

VII.  *Petitioners' Disability Status*

Lastly, we turn to Mr. Tuma's arguments with respect to petitioners' disability status. At trial, Mr. Tuma seemed to argue that at least some portion of petitioners' benefits paid by the RRB should be treated as nontaxable because both he and Mrs. Tuma are disabled. In his posttrial brief, however, Mr. Tuma's disability argument appeared to take the form of a request for a section 22 disability credit with respect to Mrs. Tuma. As to the latter argument, we address it only insofar as to note that it is raised too late for consideration. *See Aero Rental v. Commissioner*, 64 T.C. 331, 338 (1975). And, as to the former, although we liberally construe Mr. Tuma's brief not to have abandoned it, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), we reject it as well.

[*20]  We have found it to be true that Mr. Tuma retired on the basis of disability, which is consistent with our conclusion that Mr. Tuma began receiving benefits from the RRB at age 55.  *See* 45 U.S.C. § 231a.  We have also found it to be true that Mrs. Tuma's Social Security benefits were designated as paid on the basis of disability.  And we assume for purposes of this analysis that Mr. and Mrs. Tuma were indeed disabled during the years in issue.  Mr. Tuma, however, has not alleged any basis in the law for his position that these facts require some portion of petitioners' benefits be tax free.

As we have discussed, section 61(a) provides that gross income means all income from whatever source derived, including pensions and annuities, unless such income has been specifically excepted from inclusion by the Code.  *See* § 61(a)(9), (11); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. at 430.  The Supreme Court has long reiterated the sweeping scope of section 61, and it is well established that statutory exclusions from income are to be narrowly construed.  *Commissioner v. Schleier*, 515 U.S. 323, 327–28 (1995).  It is equally well established that taxpayers seeking an exclusion must bring themselves within its "clear scope."  *Dobra v. Commissioner*, 111 T.C. 339, 349 n.16 (1998); *Graves v. Commissioner*, 89 T.C. 49, 51 (1987), *supplementing* 88 T.C. 28 (1987).

As respondent points out, compensation paid for injuries or sickness may be excludable from gross income under section 104 if certain designated requirements are met, such as the compensation's having been received under a workmen's compensation act or through accident or health insurance.  *See* § 104(a).  But, as he also points out, petitioners have failed to prove that any such requirement has been met in these cases.  Rather than demonstrate that petitioners' benefits fall under section 104, or any other specific statutory exclusion, Mr. Tuma instead seems only to have argued for a general exclusion based on disability for which he provides no support in the Code and for which we have found none.[11]  We have previously held both railroad retirement and Social Security benefits paid due to disability includible in gross income and see no reason to hold differently here.  *See Reimels*, 123 T.C. at 247–48; *Bradley*, 62 T.C.M. (CCH) at 1312.  Petitioners may not exclude any portion of the benefits they received from the RRB from their gross income on the basis of disability.  *Cf. Gibson v.*

---

[11] In an effort to bolster his position, Mr. Tuma does point to his use of TurboTax to prepare petitioners' returns along with his reading of various IRS publications.  But, neither of these has the force of law.  *See Miller v. Commissioner*, 114 T.C. 184, 195 (2000); *see also Bunney v. Commissioner*, 114 T.C. 259, 267 (2000) ("Tax preparation software is only as good as the information one puts into it.").

[*21] *Commissioner*, T.C. Memo. 1996-140, 71 T.C.M. (CCH) 2526, 2526 ("[The taxpayers] argue that benefits received from the [RRB] are not taxable. This, however, is simply not the case.").

VIII. *Conclusion*

Petitioners received railroad retirement and Social Security benefits from the RRB during each of the years in issue. Petitioners have failed to prove that respondent incorrectly determined the adjustments to petitioners' income on the basis of amounts that were not reported in the information returns issued by the RRB and the SSA with respect to these benefits. They have also failed to prove that any portions of these benefits are nontaxable on account of disability. Petitioners have therefore failed to demonstrate that respondent's income determinations are arbitrary or erroneous, and, except to the extent of respondent's concessions and our holding with respect to the recovery of Mr. Tuma's employee contributions, we conclude that the benefits petitioners received from the RRB are includible in their gross income as determined in the 2015 and the 2016 NODs.

We have considered all of the parties' arguments and, to the extent they are not discussed herein, find them to be irrelevant, moot, or without merit.

To address respondent's concessions and to reflect the foregoing,

*An order of dismissal as to petitioner Deborah Ann Tuma will be entered, and decisions will be entered under Rule 155.*